G. R. M., Appellant,

v.

W. M. S., B. C. M., A. E. M., Appellees.

B. C. M., A. E. M., Cross-Appellants,

v.

G. R. M., W. M. S., Cross-Appellees.

Court of Appeals of Kentucky.

June 5, 1981.

As Modified July 10, 1981.

Jerald R. Steinberg, Louisville, for appellant and cross-appellant, G. R. M.

Jack R. Underwood, Jr., Louisville, for appellee and cross-appellee.

Peter F. Manning, Louisville, for appellees and cross-appellants.

### REVERSING AND REMANDING

Before  LESTER,  McDONALD  and REYNOLDS, JJ.

LESTER, Judge.

This is an appeal from findings of fact, conclusions of law, and an order of the Jefferson Circuit Court by which the parental rights of the appellant and cross-appellee herein, G. R. M., in the appellees and cross-appellants, B. C. M. and A. E. M., were terminated.

G. R. M. and W. M. S. were married in Louisville, Kentucky, on August 14, 1970, and divorced in Brookville, Indiana on June 2, 1976. B. C. M., their son, was born in Indiana on March 28, 1973, and A. E. M., their daughter, in Louisville on January 10, 1975. The appellant-father was a school teacher during most of the marriage, working entirely in Indiana, and the family lived there during the school year, but returned to Louisville during the summers. Near the end of the summer of 1974, as appellant prepared to return to Indiana to teach, his wife informed him that she did not wish to go back and would remain in Louisville. Shortly thereafter, W. M. S. attempted to file for divorce in Indiana, but through some oversight, appellant was not served. G. R. M. resisted the thought of divorce and apparently made attempts to reconcile with his wife, but to no avail. Then upon advice of counsel, he too filed for divorce in Indiana, in order to protect his property rights. The divorce dragged on for two years primarily due to the appellant's unwillingness, to end the marriage. Throughout this two year period, the record shows that the children were in the custody of their mother, and that the father visited his son only a few times, early in that period, and only saw his daughter once, at the hospital a few days after her birth. Appellant clearly paid some child support to appellee over that two-year period, but it was apparently less than that agreed upon in the temporary support order.

Following the divorce, G. R. M. made several attempts to contact his ex-wife, by phone calls to her parents with whom she lived for a while, and then by visits to her own home. The appellee-mother had her phone unlisted when she moved to her own home because, she alleges, appellant made harassing phone calls to her. It was his testimony that he was told by his ex-wife that she did not want him to see the chil-

dren anymore and that she did not want his money as child support. Appellee verified this conversation. Upon her remarriage, she moved into a new residence and appellant lost contact with her and the children.

For a period of approximately four and one-half years, appellant had no contact with his children. After the divorce, he paid a grand total of $20 in child support, although the decree required $15 per week per child. It is undisputed that the appellant knew the phone number of appellee's parents, that his father and her father, and for a short time, appellant himself, worked for the same employer, and that appellant and appellee had mutual friends. Likewise, appellee could have contacted appellant by merely obtaining his number from the phone book. Appellant states that he was advised early on by Indiana counsel that mere payment of child support would not insure visitation. Coupling this belief with appellee's rebukes of his money and companionship for his children, appellant apparently gave up trying to locate his children and provide for them.

In early 1979, W. M. S. filed a complaint against her ex-husband in the juvenile court for non-support. It was her admitted aim in doing so to obtain a consent for adoption of the children by her present husband in exchange for cancellation of back child support. G. R. M. offered to pay the support and in fact did so for some eight months prior to termination of his parental rights. He did not consent to the adoption however, so appellee filed the petition to terminate. In her petition, she cited the failure of appellant to give support or parental care and protection to the children, as well as allegations of abandonment and neglect.

After hearing the evidence, the trial court entered an order terminating appellant's parental rights. Appellant then moved the court to make findings of fact and conclusions of law based upon the evidence. Attorneys for both sides submitted findings of fact and conclusions of law. The trial judge adopted those proffered by the appellee.

On direct appeal, the appellant alleges error by the trial court in failing to make its own specific findings and conclusions pursuant to CR 52.01. We must agree with this argument. The rule states in pertinent part:

> In all actions tried upon the facts without a jury or with an advisory jury, *the court shall find* the facts specifically and state separately its conclusions of law thereon and render an appropriate judgment .... (emphasis added).

This particular problem of a trial judge delegating the preparation of findings of fact and conclusions of law to counsel has been previously addressed by this court in *Brunson v. Brunson*, Ky.App., 569 S.W.2d 173 (1978) and *Callahan v. Callahan*, Ky. App., 579 S.W.2d 385 (1979). Both decisions illustrate the distaste of the appellate courts for findings so prepared. Particularly, *Callahan* held that the trial court committed reversible error in failing to make its own findings as required by CR 52.01. The trial judge must find the facts and make conclusions of law as per the civil rule.

Appellant also argues that the trial court abused its discretion in terminating his parental rights. His assertions are basically factual and concern his inability to locate his wife, her unwillingness to talk to him, to let him see the children or to accept child support, as well as the hostility of his wife's parents, and the frustration of his efforts in general. The statute governing involuntary termination of parental rights provides as follows:

> If the circumstances described in subsection (1), (2), or (3) [dependent, neglected abandoned or abused child] of this section exist with respect to only one (1) of the two (2) parents, the parental rights of that parent may be terminated, ... if one (1) of the two (2) parents has willfully, substantially, and continuously refused for a period of at least one (1) year to give or pay any support, the parental rights of that parent may be terminated immediately by order of the court .... KRS 199.603(4).

█ Having already set aside the findings of the trial court, we do not think it improper to comment upon the sufficiency of the evidence supporting the court's order of termination. While it is true that appellant did not support his children for some three years and did not even see them for over four years, we believe that this was due in great part to the actions and attitude of the appellee, his ex-wife. Even the guardian noted in his report that appellant "did not exercise his rights for very compelling reasons." To terminate a father's parental rights on this basis under this provision flies in the face of the true spirit and intent of this statute, which is to sever relations between innocent children and a deadbeat, disinterested parent. The uncontroverted facts here demonstrate that G. R. M. very much wanted to support and have a relationship with his children. Other facts have not eluded this court. Specifically, though it appears that the children have formed a stable relationship, even that of parent-child, with their mother's new husband, we view the tactic of the mother in filing a complaint for non-support, solely to extract a consent for adoption, as most reprehensible. Furthermore, although it would have been proper, and appellee's new spouse expressed his wish to adopt these children, there was no petition for adoption filed along with the petition for termination.

On the cross-appeal, the guardian ad litem for the children raises the issue of the propriety of terminating the parental rights without a contemporaneous petition for adoption. To a certain extent, this has already been discussed, but we would note that the statute governing involuntary termination of parental rights (KRS 199.603) does not require a simultaneous adoption proceeding.

█ The guardian's second contention was that the court erred in failing to award him a fee. We note that the involuntary termination statute requires that a guardian ad litem be appointed for the children involved. KRS 199.603(9). In addition, Civil Rule 17.03(5) provides: "The court

*shall* allow the guardian ad litem a reasonable fee for his services, to be taxed as costs." (emphasis added). The record herein discloses that upon submission of his report the guardian also included a personal affidavit detailing the hours spent and the costs of compiling that report along with a tendered order awarding him a reasonable fee, the amount of which was to be filled in by the judge. Clearly, this guardian is entitled to a reasonable fee and the trial judge should order it paid.

The judgment and order of the trial court is reversed and this case remanded for further proceedings consistent with this opinion.

All concur.