Margarete W. BRUNSON, Appellant,

v.

William A. BRUNSON, Appellee.

William A. BRUNSON, Cross-Appellant,

v.

Margarete W. BRUNSON,
Cross-Appellee.

Court of Appeals of Kentucky.

April 28, 1978.

As Modified On Denial of Rehearing
Aug. 4, 1978.

John J. Chewning, Hopkinsville, for appellant.

W. Douglas Myers, Keith & Myers, Hopkinsville, for appellee.

Before COOPER, GANT and PARK, JJ.

PARK, Judge.

This is an appeal and cross-appeal from a decree of the Christian Circuit Court dissolving the marriage between Margarete and William Brunson. Mrs. Brunson appeals asserting that the trial court erred in assigning the nonmarital property of the parties. Mrs. Brunson also contends that the trial court committed error in its division of the marital property. On his cross-appeal, Mr. Brunson attacks the trial court's allowance of periodic maintenance to Mrs. Brunson.

The parties were married for 11½ years. No children were born to the marriage, but both parties had children by prior marriages. Mrs. Brunson is forty-nine years old, and she is currently employed as a real estate salesman. Mr. Brunson is fifty-two years old and is a farmer.

The record in this case involves six volumes containing 817 pages. The case was tried by deposition, with both parties sub-

mitting extensive trial briefs. The master commissioner filed a one page report which contained no findings of fact. The report did contain five recommendations: (1) that the marriage be dissolved; (2) that Mr. Brunson pay Mrs. Brunson the sum of $700.00 per month as maintenance; (3) that Mrs. Brunson be awarded all personalty then in her possession; (4) that Mr. Brunson pay the costs of the action including the attorneys' fees for both parties; and (5) that the court require one of the attorneys to draft a judgment in accordance with the commissioner's recommendations.

The trial judge followed the commissioner's recommendations and directed Mr. Brunson's attorneys to prepare the judgment. The findings of fact, conclusions of law and a final decree drafted by Mr. Brunson's attorneys were adopted by the trial court with only one minor interlineation. The findings of fact adopted by the court contained eighteen numbered paragraphs. The conclusions of law contained nine numbered paragraphs.

Civil Rule 52.01 provides in part:

In all actions tried upon the facts without a jury or with an advisory jury, *the court shall find the facts specifically* and state separately its conclusions of law thereon and render an appropriate judgment . . . . (Emphasis added)

The practice by some trial courts of delegating the task of preparing findings of fact to the "winning attorney" has been universally disapproved. In *Kentucky Milk Marketing & Anti-Monopoly Commission v. Borden Co.*, Ky., 456 S.W.2d 831, 834–35 (1970), the court stated:

We realize that it has become a custom because of overwork for the trial courts to permit attorneys to draft findings of fact and conclusions of law. Many times these are submitted to the court by both sides before the court has made a final adjudication of the case. We do not condemn this practice in instances where the court is utilizing the services of the attorney only in order to complete the physical task of drafting the record. However, to the extent that the court delegates its power to make findings of fact and draw conclusions this is not good practice. . . .

To permit counsel to clutter up the record by filing detailed, lengthy, contradictory findings of fact and conclusions of law, which, as in this case, are designed for no purpose other than an attempt to cover up mistakes that might have been made in the trial can serve no useful purpose but to unduly enlarge, confuse, compound and expand appellate records. This is a practice followed by a large number of courts and attorneys. It increases our burden and does not help their case. What is said here is not meant as personal criticism of the judge or attorneys who tried this case. They were following a widespread practice which we hope to curtail.

In *United States v. El Paso Natural Gas Co.*, 376 U.S. 651, at 656, 84 S.Ct. 1044, at 1047, 12 L.Ed.2d 12 (1964), the Supreme Court stated:

There was a trial, and after oral argument the judge announced from the bench that judgment would be for appellees and that he would not write an opinion. He told counsel for appellees "Prepare the findings and conclusions and judgment." They obeyed, submitting 130 findings of fact and one conclusion of law, all of which, we are advised, the District Court adopted verbatim. Those findings, though not the product of the workings of the district judge's mind, are formally his; they are not to be rejected out-of-hand, and they will stand if supported by evidence. . . . Those drawn with the insight of a disinterested mind are, however, more helpful to the appellate court.[1]

---

1. In that case, the Supreme Court approved the following remarks by Judge Wright:

"Who shall prepare the findings? Rule 52 says the court shall prepare the findings. 'The court shall find the facts specifically and state separately its conclusions of law.' We all know what has happened. Many courts simply decide the case in favor of the plaintiff or the defendant, have him prepare the findings of fact and conclusions of law and

*See also* 9 Wright and Miller, *Federal Practice and Procedure* § 2578 (1971).

Before turning to the specific arguments presented by the parties, we note a few of the deficiencies in the findings of fact and conclusions of law prepared by Mr. Brunson's attorneys. Finding 15 recites that Mrs. Brunson has obtained a "college education" during the marriage. In fact, Mrs. Brunson has no college degree, having taken nine hours of courses at a local community college in order to obtain a real estate salesman's license. Finding 14 recites that Mr. Brunson's income is highly erratic and irregular and cannot be reasonably projected. On the other hand, finding 17 recites that Mrs. Brunson is "gainfully employed in appropriate employment." An examination of the parties' income tax returns for the last three years of the marriage reveals that Mr. Brunson had net income from farming operations ranging from a low of $23,260.67 to a high of $48,960.85. Mrs. Brunson's net income as a real estate salesman ranged from a low of $1,018.73 to a high of $4,225.74. Although the conclusions of law recite that the parties acquired marital property, there are no findings respecting the extent or value of the marital property. With these considerations in mind, we shall examine the various contentions of the parties.

I

■ At the time of the marriage, Mrs. Brunson owned property having a net value of $34,336.00. She acknowledges that she made gifts totalling $10,000.00 to her children during the marriage. Mrs. Brunson argues that the difference between the value of the property which she brought to the marriage and the gifts to her children, $24,-336.00, constituted nonmarital property which should have been assigned to her under KRS 403.190(1). The trial court recognized that Mrs. Brunson brought property into the marriage. However, because she failed to trace any of that money or property into any specific assets which were owned by the parties at the time of the separation, the trial court concluded that it had no power to assign any property to Mrs. Brunson as nonmarital property. The record supports the trial court's conclusion that Mrs. Brunson failed to trace the assets which she brought into the marriage into assets owned at the time of the separation. The trial court did not err in refusing to assign any amount to Mrs. Brunson as nonmarital property. *Farmer v. Farmer*, Ky., 506 S.W.2d 109, 112 (1974).

■ Mrs. Brunson further asserts that the trial court erred in assigning to Mr. Brunson certain assets as nonmarital property. The trial court upheld all of Mr. Brunson's contentions respecting what constituted his nonmarital property. At the time of the separation, Mr. Brunson was the owner of life estates in extensive farm lands in south Christian County. He acquired a life estate in two of the farms by deeds of gift from his father. He was devised a life estate in two other farms under the will of his father. He also was the owner of a residence which was a gift from his mother and father. The trial court correctly held that this real estate constituted nonmarital property under KRS 403.190(2)(a), to the extent that its value was not enhanced during the marriage by joint efforts of the parties.

■ At the time of separation, the sum of $40,000.00 was on deposit at the Hopkins-

sign them. This has been denounced by every court of appeals save one. This is an abandonment of the duty and trust that has been placed in the judge by these rules. It is a noncompliance with Rule 52 specifically and it betrays the primary purpose of Rule 52—the primary purpose being that the preparation of these findings by the judge shall assist in the adjudication of the lawsuit. "I suggest to you strongly that you avoid as far as you possibly can simply signing what some lawyer puts under your nose. These lawyers, and properly so, in their zeal and advocacy and their enthusiasm are going to state the case for their side in these findings as strongly as they possibly can. When these findings get to the courts of appeals they won't be worth the paper they are written on as far as assisting the court of appeals in determining why the judge decided the case." Seminars for Newly Appointed United States District Judges (1963), p. 166.

ville Savings and Loan Association. Mr. Brunson traced this amount to proceeds received by him from two life insurance policies following the death of his father. The trial court correctly held that this $40,000.00 account constituted nonmarital property under KRS 403.190(2)(b).

■ The trial court also awarded Mr. Brunson as nonmarital property the sum of $5,000.00 received by him from another insurance policy on his father's life. According to Mr. Brunson's own testimony, this $5,000.00 was put in his farming business and "used for operating costs." The trial court's finding that this $5,000.00 could be traced to cash and personal property held by Mr. Brunson is not supported by the record, and that finding is clearly erroneous within the meaning of CR 52.01.

■ Mr. Brunson also received, as a gift from his father, farm machinery having a value of $10,165.26. The trial court's finding that this machinery is traceable to farm machinery presently held by Mr. Brunson is not supported by the record. The husband's brief on appeal concedes that Mr. Brunson did not trace each individual item of farm machinery into farm machinery which he owned at the date of separation. In fact, there was no effort to trace any of this farm machinery. According to the husband's accountant, Mr. Brunson owned farm machinery having a value of $88,930.44 on the date of separation. Assuming that Mr. Brunson still owned some of the farm machinery given to him by his father on January 1, 1969, there is no basis for assuming that it would have the same value on the date of the separation, July 6, 1976. The trial court erred in assigning any portion of the farm machinery to Mr. Brunson as nonmarital property.

■ Mr. Brunson also inherited from his father personal property having a value of $46,260.58. The trial court found that this personalty was traceable to cash and personal property held by the husband at the time of the separation. This finding is clearly erroneous for two reasons. First, the record also established that the proper-

ty received by Mr. Brunson from the estate of his father was subject to various liabilities. Mr. Brunson was required to pay $22,650.10 on behalf of his father's estate for funeral expenses, administrative expenses and debts and taxes owed by the estate of his father. These liabilities were a charge against the nonmarital property received by the husband from his father's estate, and the value of those assets should have been reduced accordingly for the purposes of KRS 403.190(2). Even more important, the personalty inherited by the husband from his father was not traced into specific assets owned at the time of the separation. Mr. Brunson's accountant prepared financial statements which indicated that the personal property inherited by the husband had been "co-mingled and included with subsequent assets accumulated." It was clearly erroneous for the trial court to assign any amount to Mr. Brunson as nonmarital property, traceable to the personalty inherited from his father.

II

Mrs. Brunson claims that the trial court failed to make a just division of the marital property as required by KRS 403.190. As a division of marital property, the trial court awarded Mrs. Brunson a Lincoln Continental automobile and $7,300.00 paid by the husband to the wife prior to the entry of the decree. Of this cash payment, $6,300.00 represented nine months of temporary maintenance at $700.00 per month. The balance of the cash represented a payment of $1,000.00 made by the husband to the wife for "bucket" calves. The automobile was valued at $3,625.00. Thus, the total award to the wife was only $10,925.00, which included temporary maintenance.

■ According to the husband's accountant, Mr. Brunson had a net worth of $192,137.48 after excluding those items which he considered to be nonmarital property. In his appellate brief, Mr. Brunson suggests that this sum should be decreased by his net worth on the date of the marriage and increased by the amount by which his preexisting liabilities were reduced dur-

ing the period of the marriage. The resulting figure, $156,845.21 would represent the increase in the husband's net worth during the marriage by accumulations other than through gifts and inheritances. The husband asserts that only a portion of that increase in net worth represents marital property. Mr. Brunson claims that one-third of the increase in net worth during the marriage represents accumulated income from the farming operations attributable to the land which is nonmarital property. He argues that this accumulated income is nonmarital property. This argument is without merit. KRS 403.190 is based upon section 307 of the Uniform Marriage and Divorce Act. The commissioner's note to that section of the uniform act states in part:

> The phrase "increase in value" used in subsection (b)(5) is not intended to cover the income from property acquired prior to the marriage. Such income is marital property. Similarly, income from other nonmarital property acquired after the marriage is marital property.

*See also* Petrilli, *Kentucky Family Law* § 24.6 at 38–39 (1977 supp.). Any accumulation of income from the husband's nonmarital property constituted marital property to be divided by the court under KRS 403.190(1). Using the information supplied by the husband's accountant, the marital property of the parties amounted to more than $150,000.00. According to the testimony offered on behalf of the wife, the value of the marital property was substantially greater. The trial court made no findings with respect to the extent and value of the marital property. Nevertheless, it is patent that an award to the wife of property and cash having a value of only $10,925.00 does not constitute a "just" division of the marital property.

### III

On his cross-appeal, Mr. Brunson asserts that the trial court erred in its award to the wife of $700.00 per month as maintenance. Because the trial court must reconsider its division of the marital property, the trial court will be free to reconsider

the question of maintenance in light of its revised division of marital property. Consequently, it would be inappropriate at this time to approve or disapprove the award of maintenance. *Sharp v. Sharp*, Ky., 491 S.W.2d 639, 645 (1973).

### IV

On the appeal (CA–1219–MR), the judgment of the circuit court is reversed, and on the cross-appeal (CA–1579–MR) the case is remanded, with the following directions: (a) to reassign the nonmarital property in accordance with this opinion; (b) to divide the marital property in just proportions after making specific findings of fact and conclusions of law respecting the extent and value of the marital property; and (c) to reconsider the award of maintenance in the light of the new division of marital property.

All concur.