**Ruby E. CHENAULT, Appellant,**

v.

**William C. CHENAULT, Appellee.**

**No. 89–SC–185–DG.**

Supreme Court of Kentucky.

Oct. 18, 1990.

As Amended Nov. 8, 1990.

William F. Woodward, Joseph L. Lenihan, Woodward, Hobson & Fulton, Louisville, for appellant.

Joseph V. Mobley, Louisville, for appellee.

LAMBERT, Justice.

This Court granted discretionary review of the decision of the Court of Appeals which imposed stringent requirements upon appellant, Ruby E. Chenault, who sought to "trace" the proceeds of nonmarital property at the time the marriage was dissolved. In effect, the Court of Appeals held that at the time of dissolution, a party

undertaking to prove the nonmarital character of property must do so by documentary evidence and with near mathematical precision. We believe such a requirement is beyond the mandate of KRS 403.190 and contrary to sound public policy. Hence, we reverse.

Ruby and William married in 1971. At the time of their marriage both were in their early 50's and William was the father of a seven-year-old daughter who lived with him. During the 15–year duration of their marriage, Ruby discharged the normal duties of homemaker and mother and after William's daughter went to college, worked in a low-wage position at the Speed Art Museum in Louisville. During the marriage, William worked as a construction worker and after his retirement from that position, worked as a security guard at the Speed Museum.

On this appeal, the principal and decisive issue is whether the Court of Appeals, affirming the trial court, erred in holding that Ruby failed to present sufficient evidence that certain liquid assets should have been assigned to her as nonmarital property. Ruby contends that she brought to the marriage at least $21,000 in cash, a home valued at $14,000, and 27 shares of stock in Standard Oil of California. At trial, she presented convincing evidence that she owned her home prior to the marriage and that the home was sold and the proceeds realized during the marriage. Likewise, she presented convincing evidence that at a minimum she had $10,000 in cash one year prior to the marriage and that a Treasury Note for $10,000 came due and was reinvested during the marriage. Finally, Ruby testified that she inherited 27 shares of stock in Standard Oil of California and that by virtue of stock dividends and stock splits, this number of shares grew significantly before and during the marriage. Despite the sale of some of this stock during the marriage, a fact which William admits, Ruby continued to own 50 such shares at the time of trial. Regardless of the foregoing evidence, the Court of Appeals affirmed the trial court's determination that Ruby had failed to establish the nonmarital character of these assets. The Court of Appeals said:

"The testimony below established that at the time of her husband's death, the appellant was bequeathed a house worth approximately $14,000 and other cash and securities worth over $21,000. Additionally, she inherited 27 shares of stock in Standard Oil Company. Nevertheless, there was a total inability on the part of her counsel to trace the course of either the cash or the stock subsequent to 1966. Although the appellant testified that she purchased CD's with the money and continued to roll them over during the duration of the marriage, she was unable to document such testimony, either as to dates of purchase or specific amounts involved....

"Similarly, although the appellant testified that she inherited 27 shares of standard oil company at the time of her husband's death, there were no stock certificates or other records introduced by her counsel to substantiate the claim that she continued to hold them from 1966 to 1971 and from 1971 until 1986. On the contrary, the only exhibits introduced on this issue were those introduced by the appellee, showing stock certificates issued to the appellant in the Standard Oil Company of California beginning in September of 1979 and continuing to August 19, 1980. Such evidence, together with the appellant's own testimony that she had during the marriage sold a portion of her stock at different times, supports the trial court's finding that such property must be considered marital. And although the house she inherited from her first husband was not sold until 1974— some three years after the parties were married—the trial court correctly determined that there was no tracing of either the down payment or the subsequent mortgage payments paid to her by her daughter and son-in-law."

In its findings of fact, the accuracy of which is not disputed by either party, the trial court found that in addition to the 50 shares of Standard Oil of California stock, Ruby was then in possession of cash and securities valued at $91,329. Nevertheless,

by virtue of her inability to trace any of these assets to the satisfaction of the trial court, it was determined that all of such assets were marital property.

■ In KRS 403.190(2)(b), marital property is defined, in part, as "all property acquired by either spouse subsequent to the marriage except: ... (b) Property acquired in exchange for property acquired before the marriage or in exchange for property acquired by gift, bequest, devise or descent." Subsection (3) of KRS 403.-190. creates a presumption that all property acquired during the marriage is marital property, but permits this presumption to be overcome by proof that the property was acquired as in subsection (2) of the statute. Numerous decisions of this Court and the Court of Appeals have construed this statutory provision and from these decisions there has emerged the concept of "tracing" although this term is nowhere found in the statute. Among the more significant decisions on this point are *Turley v. Turley*, Ky.App., 562 S.W.2d 665 (1978), *Brunson v. Brunson*, Ky.App., 569 S.W.2d 173 (1978), *Allen v. Allen*, Ky.App., 584 S.W.2d 599 (1979), *Daniels v. Daniels*, Ky.App., 726 S.W.2d 705 (1987), and *Sharp v. Sharp*, Ky., 516 S.W.2d 875 (1975).

■ Even a cursory review of the foregoing decisions reveals a requirement of considerable precision in the process of tracing if the property claimed to be nonmarital is to be so found. For instance, in *Turley*, the Court said:

"Mr. Turley failed to show that any property owned by the parties at the time of the separation was acquired by use of his inheritance or from the proceeds from the sale of the automobile and furniture owned by him prior to the marriage. Because he did not trace the inheritance or the proceeds, if any, from the disposition of the automobile and furniture, it was error for the trial court to award him the value of such items." *Id.* at 668.

Likewise in *Brunson*, the Court said:

"The trial court recognized that Mrs. Brunson brought property into the marriage. However, because she failed to trace any of that money or property into any specific assets which were owned by the parties at the time of the separation, the trial court concluded that it had no power to assign any property to Mrs. Brunson as nonmarital property. The record supports the trial court's conclusion that Mrs. Brunson failed to trace the assets which she brought into the marriage into assets owned at the time of the separation." *Id.* at 176.

In *Daniels*, the Court determined that nonmarital property was sufficiently traced and affirmed the trial court's assignment to the owner. The Court said:

"The trial court properly determined that Harvey had traced money which he had inherited to its use in the purchase of stock and, except for one trade involving the sale of one stock and the purchase of another in 1981, Harvey had kept intact the securities which he had bought from his cash inheritances." *Id.* at 706.

While such precise requirements for non-marital asset-tracing may be appropriate for skilled business persons who maintain comprehensive records of their financial affairs, such may not be appropriate for persons of lesser business skills or persons who are imprecise in their record-keeping abilities. This problem is compounded in a marital union where one spouse is the recorder of financial detail and the other is essentially indifferent to such matters. Moreover, such a requirement may promote marital disharmony by placing a premium on the careful maintenance of separate estates.

In *Allen v. Allen, supra,* the Court of Appeals retreated somewhat from its earlier decisions and held that "the requirement of tracing should be fulfilled, at least as far as money is concerned, when it is shown that nonmarital funds were deposited and commingled with marital funds and that the balance of the account was never reduced below the amount of the nonmarital funds deposited." *Id.* at 600. The view expressed in *Allen* is consistent with the concurring opinion of Vance, J., in *Turley v. Turley, supra.* In that concurring opinion, it was persuasively argued that all nonmarital property should be restored

upon dissolution of the marriage providing the parties have, throughout the marriage, maintained at least as much in assets as the combined value of their nonmarital property. By logical inference, if this view were adopted, any decrease during the marriage in the parties' total nonmarital asset value would be charged *pro rata* against their percentage share of total nonmarital property to be assigned.

As appealing as the foregoing view may be, particularly when the simplicity of its application and its inherent equity is considered, we believe the concept of tracing is too firmly established in the law to be abandoned at this time.

Accordingly, we shall adhere to the general requirement that nonmarital assets be traced into assets owned at the time of dissolution, but relax some of the draconian requirements heretofore laid down. We take this position, in part, in reliance upon the trial courts of Kentucky to detect deception and exaggeration or to require additional proof when such is suspected.

■ In the case at bar, Ruby presented unchallenged evidence that she owned her home prior to her marriage and that it was sold during her marriage for $14,000. Likewise, Ruby proved that she bought and paid for a $10,000 Treasury Note prior to her marriage and she testified that it was reinvested during the course of the marriage. When this evidence is considered along with the trial court's unchallenged finding of fact that at the time of the dissolution, Ruby had in her possession $91,000 worth of liquid assets, and that during the marriage she had worked little and then only in a low-income position, the conclusion is unavoidable that the money Ruby claims as nonmarital is included in her current asset portfolio and that such should be assigned to her. From the evidence it is obvious that Ruby was frugal and a cautious investor. It would be completely unreasonable to believe that she squandered the assets she had when her marriage began and managed to subsequently acquire $91,000. It is unremarkable and less than fatal to her position that Ruby was unable to document every interest payment and reinvestment made during a 16-year period.

■ Finally, in view of her testimony and the absence of evidence to the contrary, we are convinced that Ruby owned 27 shares of Standard Oil stock prior to the marriage; that during the marriage the number of shares increased by means of stock dividends and stock splits; that during the marriage a portion of the stock was sold; and at the time of the dissolution, she owned 50 shares of Standard Oil stock. This evidence was sufficient to require a finding that the remaining 50 shares of Standard Oil stock is nonmarital property and should be assigned to her.

■ Also before this Court is Ruby's contention that the trial court erred in refusing to consider and rule upon her claim that she should be awarded a portion of William's Ironworker's pension; that William's share of the division of marital assets should be charged for the money he spent upon his daughter's education; and that William's allegedly imprudent investment in the stock market should be charged against his portion of the marital estate. The Court of Appeals did not reach the merits of these issues upon its determination that same were not raised "in the trial below but only in a motion to vacate the judgment." The judgment of the trial court makes absolutely no mention of any of these issues.

At the trial of this case, the issues Ruby now presents were indeed raised and considerable evidence was presented thereon, but for reasons which are not apparent, the trial court neglected to rule. It is apparent, however, that prior to the entry of judgment, Ruby's counsel sought a opportunity to present a memorandum on these issues and the motion was overruled. Upon receipt of the trial court's findings of fact, conclusions of law and decree, Ruby moved pursuant to CR 52.02 and CR 59.05 to alter, amend or vacate the judgment and identified the issues upon which such action was sought. Filed with her motion was an extensive memorandum which clearly identified the issues upon which she sought rulings of the court. Despite this,

her motion for rulings on these issues was overruled and there was no modification of the court's final decree.

From our review of the record, it appears that Ruby took every reasonable step to obtain a ruling on these issues from the trial court. Accordingly, the Court of Appeals erred in its determination that these issues were unpreserved. Upon remand and retrial, Ruby may again raise these issues in the trial court.

■ The final issue for our consideration concerns an antenuptial agreement executed by the parties prior to their marriage. We have examined this agreement and are persuaded that it was not intended to apply upon dissolution of the parties' marriage; that it was an agreement only in contemplation of death. Accordingly, we need give no further consideration to the purported antenuptial agreement.

In addition to the foregoing issues on appeal, Ruby has moved the Court to strike certain portions of William's brief. By order entered on May 16, 1990, this Court passed consideration of the motion to strike to the merits. Upon present consideration of the motion to strike and our decision on the merits, the motion should be overruled.

Inasmuch as we have held that the courts below erred in their determinations with regard to the items of nonmarital property identified herein, and in recognition of the requirement that prior to the division of marital property, there must be a proper assignment of nonmarital property (KRS 403.190(1); *cf., Low v. Low*, Ky., 777 S.W.2d 936 (1989)), it is necessary to remand this case for a new trial. Upon retrial, if the evidence presented is the same or substantially the same as appears here, this Court's decision shall be deemed to be the law of the case. As to all other issues, the trial court will be unrestricted in its consideration thereof.

This cause is reversed and remanded to the Jefferson Circuit court for further proceedings consistent herewith.

STEPHENS, C.J., and COMBS, LEIBSON and WINTERSHEIMER, JJ., concur.

GANT, J., dissents.

VANCE, J., concurs by separate opinion.

VANCE, Justice, concurring.

I concur in the result reached by the majority opinion and concur in the view that the draconian requirements of the tracing of nonmarital assets set forth by earlier cases should be relaxed. The majority opinion, in my opinion, does not set forth guidelines which can be used to determine the adequacy of tracing of nonmarital assets in cases other than the one under review.

Upon the dissolution of a marriage, it is the duty of the court to assign each spouse's property to him and to divide the marital property in just proportions. K.R.S. 403.109(1). All property acquired by either spouse subsequent to the marriage is presumed to be marital property except:

1. Property acquired by gift, bequest, devise, or descent;

2. Property acquired in exchange for property acquired before the marriage or in exchange for property acquired by gift, bequest, devise, or descent;

3. Property acquired by a spouse after a decree of legal separation;

4. Property excluded by valid agreement of the parties; and

5. The increase in value of property acquired before the marriage to the extent that such increase did not result from the efforts of the parties during marriage.

K.R.S. 403.190(2). Property owned by a spouse prior to the marriage is also nonmarital property.

As long as nonmarital property is kept separate and apart, there usually is no difficulty in proving its classification as nonmarital. When a nonmarital asset is sold or otherwise converted to cash and commingled with marital assets it loses its separate identity, and it often becomes impossible to trace any specific dollar in a commingled account as the same dollar that

was received in exchange for a nonmarital asset.

I would not require such precise tracing. The tracing of one asset into another is a complicated legal and accounting process, and, in my opinion, it is inimical to the spirit of marriage. As I stated in my concurring opinion in *Turley v. Turley*, Ky. App., 562 S.W.2d 665, 669 (1978):

> "Marriage connotes sharing, with the concentration upon what is 'ours' rather than what is 'his' and what is 'hers.' It does not bode well for the institution of marriage if each partner must keep in the back of his mind the possible advantage to be obtained by keeping up with and being able to trace every penny brought into the marriage. In addition, the process of tracing is usually so complex that the expense involved cannot be justified when the accumulation is small as in this case."

I think it is the clear intent of K.R.S. 403.190 that whatever property is accumulated during a marriage due to the joint efforts of the parties should be divided between them in just proportions, and whatever property that was brought to the marriage by either of them or inherited by either party or acquired in exchange for such property, should be restored to each of them as nonmarital property.

The parties to a marriage cannot be said to have accumulated any property during the marriage by their joint efforts unless they own more property than they owned at the time of the marriage or later acquired by gift or inheritance. I would therefore indulge the presumption that monies expended by them during the marriage from commingled marital and nonmarital assets was an expenditure of marital funds and would not serve to decrease the amount of their nonmarital property unless it could be shown that their total assets at some point were reduced to less than the value of their nonmarital assets. If that event should occur, the parties would, of course, have exhausted all of their marital property and part of their nonmarital property, and the value of each spouse's non-marital property should be reduced pro rata.

In other words, where marital and non-marital funds have been commingled in a bank account, all withdrawals from the account will be considered to be marital funds until the marital funds are exhausted. It would follow that the only tracing of non-marital property necessary would be proof that nonmarital property once existed. If it no longer exists in its original form, there should be proof that it had been exchanged for other property or converted into cash, and proof that the total assets upon dissolution were greater than the total value of the nonmarital assets and/or property received in exchange for such nonmarital assets. If there is a contention that the total value of their assets at sometime during the marriage was reduced to an amount less than the value of their nonmarital property, the burden of proof should rest upon the party making the claim.

We reach this result in this case. Mrs. Chenault sold her house and her $10,000.00 treasury note and was completely unable to trace the money she received in those transactions into her current assets, which now have a much greater value. Since it is not shown that her total assets were ever less than the amount she received in exchange for her house and her treasury note, we simply indulge the presumption that the amount she received for her nonmarital property remains intact as a part of the assets she now owns. She is therefore entitled to be awarded this nonmarital property before a division of marital property occurs.