OWENS–CORNING FIBERGLAS
CORPORATION, Appellant,

v.

Carl GOLIGHTLY; and Dorothy
Golightly, Appellees.

No. 96–SC–970–DG.

Supreme Court of Kentucky.

June 18, 1998.

Rehearing Denied Oct. 15, 1998.

Donald K. Brown, Jr., Gerald R. Toner, John L. Dotson, James P. Grohmann, Eric A. Paine, O'Bryan, Brown & Toner, Louisville, for appellant.

James W. Owens, Paducah, P. Jay Cone, II, Ness, Motley, Loadholt, Richardson & Poole, Charleston, SC, Kenneth L. Sales, Joseph D. Satterley, Segal, Isenberg, Sales, Stewart, Cutler & Tillman, Louisville, for appellees.

COOPER, Justice.

A McCracken Circuit Court jury returned verdicts in this products liability action in favor of Appellee Carl Golightly against Appellant Owens–Corning Fiberglas Corporation (OCF) in the sums of $290,000.00 for compensatory damages and $435,000.00 for punitive damages. The trial judge overruled OCF's post-judgment motions and the Court of Appeals affirmed. We granted discretionary review primarily to address whether the award of punitive damages was rendered in violation of the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

## I. EVIDENTIARY BASIS FOR PUNITIVE DAMAGES.

OCF was formed in 1938 by its two parent companies, Owens–Illinois and Corning Glass Works. It was stipulated at trial that between 1953 and 1958, OCF sold and distributed an asbestos-containing pipecovering manufactured by its parent company, Owens–Illinois, and distributed under the brand name "Kaylo." OCF purchased the product from Owens–Illinois in 1958, and from 1958

to 1972, OCF manufactured, marketed and sold asbestos-containing Kaylo.

From 1951 to 1984, Golightly was employed as a maintenance mechanic and insulator at Martin Marietta, formerly known as Union Carbide. In that employment, he insulated pipes and was thereby exposed to abestos-containing Kaylo. Golightly's work included removing and replacing old Kaylo and installing new Kaylo, both of which required sawing the material, thus creating a dust which he consequently inhaled. At trial, Golightly produced credible medical evidence that he was suffering from asbestosis and throat cancer, and that his exposure to asbestos-containing Kaylo in the 1950's, 60's and 70's was a substantial contributing factor in causing those conditions. There was also substantial evidence that OCF knew both before and during that period that exposure to asbestos could cause asbestosis and lung cancer, but that it continued to manufacture, sell and/or distribute asbestos-containing Kaylo without affixing any warning labels to the product. There was further evidence from which a jury could believe that in marketing Kaylo, OCF intentionally concealed, minimized, and even misrepresented the health effects of working with the product.

The jury found against OCF on the theory of strict liability, *i .e.*, that it designed, manufactured or marketed a product that was defective and unreasonably dangerous. *Dealers Transport Co. v. Battery Distributing Co.*, Ky., 402 S.W.2d 441 (1966). Twenty different defendants were sued in this litigation. All but OCF either settled or were dismissed prior to trial. The jury found under a comparative negligence instruction that the cause of Golightly's injuries was attributable 100% to OCF's conduct, and awarded punitive damages under an instruction incorporating the language of KRS 411.184 and .186.[1]

OCF first asserts that it was entitled to a directed verdict on the issue of

punitive damages because of uncontradicted evidence that Kaylo conformed to the "state of the art in existence at the time . . . the product was manufactured." KRS 411.310(2). In other words, the fact that other companies were also manufacturing and distributing asbestos-containing products which were inherently dangerous when used in the manner in which they were intended to be used should preclude OCF from being held liable for doing the same thing. The purpose of KRS 411.310(2) is not to insulate an entire industry from liability just because every member of that industry was manufacturing and distributing a product known to be inherently dangerous.

We agree that if an industry adopts careless methods, it cannot be permitted to set its own uncontrolled standard. *Herme v. Tway*, Ky., 294 S.W.2d 534 (1956). If the only test is to be that which has been done before, no industry or group will ever have any great incentive to make progress in the direction of safety.

*Jones v. Hutchinson Mfg., Inc.*, Ky., 502 S.W.2d 66, 70 (1973). Rather, the purpose of KRS 411.310(2) is to protect a manufacturer from liability for failure to anticipate safety features which were unknown or unavailable at the time the product in question was manufactured and distributed. *Id.* at 71. There was substantial probative evidence in this case that OCF knew of the health risks associated with the use of Kaylo both before and during the time it manufactured the product and placed it in the stream of commerce; and that it knowingly marketed Kaylo without warning labels, and concealed, minimized and/or misrepresented in its advertisements the health risks involved in working with the product. That evidence was sufficient to overcome OCF's motion for a directed verdict on the issue of punitive damages. *Hanson v. American Nat'l Bank & Trust Co.*, Ky., 865 S.W.2d 302 (1993);

---

1. Although KRS 411.184 has since been held unconstitutional in the context of tort litigation, *Williams v. Wilson,* Ky., 972 S.W.2d 260 (1998), there was no constitutional objection to the punitive damages instruction given in this case, *Massie v. Persson*, Ky.App., 729 S.W.2d 448, 452 (1987), *overruled on other grounds, Conner v.*

*George W. Whitesides Co.*, 834 S.W.2d 652 (1992); and, in fact, an instruction premised on KRS 411.184 and .186 is presumably more favorable to a defendant than one premised on the common law standard which we reinstated in *Williams v. Wilson, supra.*

*Horton v. Union Light, Heat & Power Co.,* Ky., 690 S.W.2d 382 (1985).

## II. DUE PROCESS IMPLICATIONS.
### A. Imposition of Punitive Damages.

■ In support of its motion for a directed verdict on the issue of punitive damages, OCF produced evidence that sixteen other juries had already awarded over $35,000,-000.00 against it for injuries resulting from its manufacture, sale and distribution of Kaylo.[2] In essence, OCF argues that it has been punished enough, and that successive punishments for the same course of conduct violates its right to due process of law. For this proposition, OCF relies primarily on the opinion of United States District Court Judge H. Lee Sarokin in *Juzwin v. Amtorg Trading Corp.,* 705 F.Supp. 1053 (D.N.J. 1989) (*"Juzwin I "*), another asbestos-related tort action in which punitive damages were sought.

> Due process requires that a limit be placed upon a defendant's liability for punitive damages for a single course of conduct. If a defendant's conduct has been evaluated by a factfinder, and if that factfinder has made an assessment of the amount of punitive damages necessary to deter and punish that conduct, then this court concludes that any further punishment would be unnecessary, repetitive, and a violation of due process. Thus, with respect to those defendants who are able to present competent proof that liability for punitive damages has already been imposed upon them for the conduct alleged to be the basis of a punitive damage claim in this action, the court will dismiss plaintiff's claim for such punitive damages.

*Id.* at 1065. However, upon reconsideration, Judge Sarokin vacated that order on grounds that he was unable to fashion a suitable remedy, because there was no guarantee that prior awards contemplated the "full" damage caused by the defendant's conduct, or that other courts in other jurisdictions would abide by his "one and only award" theory in subsequent litigation. He concluded that the problem could be solved only through uniformity established by the United States Supreme Court or national legislation. *Juzwin v. Amtorg Trading Corp.,* 718 F.Supp. 1233, 1235 (D.N.J.1989) (*"Juzwin II "*).

For similar reasons, the vast majority of courts which have considered the issue have held that successive awards of punitive damages for the same course of conduct do not violate the Due Process Clause. *E.g., Dunn v. HOVIC,* 1 F.3d 1371 (3d Cir.1993), *cert. denied,* 510 U.S. 1031, 114 S.Ct. 650, 126 L.Ed.2d 608 (1993); *Simpson v. Pittsburgh Corning Corp.,* 901 F.2d 277 (2d Cir.1990), *cert. denied,* 497 U.S. 1057, 111 S.Ct. 27, 111 L.Ed.2d 840 (1990); *Jackson v. Johns–Manville Sales Corp.,* 781 F.2d 394 (5th Cir.1986), *cert. denied,* 478 U.S. 1022, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986); *Cathey v. Johns–Manville Sales Corp.,* 776 F.2d 1565 (6th Cir. 1985), *cert. denied,* 478 U.S. 1021, 106 S.Ct. 3335, 92 L.Ed.2d 740 (1986); *Hansen v. Johns–Manville Prods. Corp.,* 734 F.2d 1036 (5th Cir.1984), *cert. denied,* 470 U.S. 1051, 105 S.Ct. 1749, 1750, 84 L.Ed.2d 814 (1985); *Man v. Raymark Industries,* 728 F.Supp. 1461 (D.Haw.1989); *Campbell v. ACandS, Inc.,* 704 F.Supp. 1020 (D.Mont.1989); *Stevens v. Owens–Corning Fiberglas Corp.,* 49 Cal.App.4th 1645, 57 Cal.Rptr.2d 525 (1996); *Spaur v. Owens–Corning Fiberglas Corp.,* 510 N.W.2d 854 (Iowa 1994); *Owens–Corning Fiberglas Corp. v. Wasiak,* 917 S.W.2d 883 (Tex.App.1996). We have no hesitancy in joining the majority on this issue.

■■ In Kentucky, the assessment of punitive damages requires consideration of not only the nature of the defendant's act, but also the extent of the harm resulting to the plaintiff. *Fowler v. Mantooth,* Ky., 683 S.W.2d 250, 253 (1984). In other words, the jury is to consider not only the defendant's conduct, but the relationship of that conduct to the injury suffered by this particular plaintiff. The punitive damages instruction given in this case authorized imposition of punitive damages only if OCF acted with "a flagrant indifference to the rights of the Plaintiff," or engaged in ,misrepresentation,

---

**2.** OCF also claims that it was "prevented" from introducing this evidence to the jury in mitigation of the punitive damages claim. In fact, for obvious strategic reasons, OCF made no attempt to introduce that evidence to the jury.

deceit or concealment of a known fact "with the intention of causing injury to this Plaintiff." The jury was further instructed that the amount of punitive damages awarded "shall bear a reasonable relationship to your compensatory damage award." In the context of a mass tort, a defendant's conduct may be viewed by a jury as more or less egregious depending on the status or situation of the particular plaintiff. For example, after acquiring knowledge of the health risks associated with exposure to asbestos, OCF distributed a brochure containing the following information concerning asbestos-containing Kaylo:

> **Easy fabrication**—ordinary tools of the trade, sufficient for all cutting, scoring or sawing. Lightweight, pleasant handling and non-irritating, non-toxic nature make it a well-liked workers' material.
>
> . . .
>
> **Easy fabrication**—Kaylo–20 Block can be cut, scored or sawed with ordinary tools of the trade. Light weight, pleasant handling and non-irritating and non-toxic nature contribute to worker well-being on the job.

A jury could reasonably believe that OCF's conduct was more egregious with respect to Carl Golightly, who was injured while employed in precisely the type of work advertised as "non-irritating" and "non-toxic" and contributing to his "well-being," than with respect to someone who was otherwise exposed to the health hazards of the product.

■ We agree with Judge Sarokin's observation in *Juzwin II, supra,* 718 F.Supp. at 1236, that it would be unfair to this plaintiff to bar his claim for punitive damages just because other plaintiffs have previously recovered damages arising out of the same conduct. We also subscribe to the view of the United States Sixth Circuit Court of Appeals that the availability of punitive damages should not be proscribed merely because a defendant's tortious behavior resulted in harm to a large number of people.

> We do not believe that defendants should be relieved of liability because, through outrageous misconduct, they have managed to seriously injure a large number of persons. Such a rule would encourage wrongdoers to continue their misconduct because, if they kept it up long enough to injure a large number of people, they could escape all liability for punitive damages.

*Cathey v. Johns–Manville Sales Corp., supra,* at 1571, quoting *Froud v. Celotex Corp.,* 107 Ill.App.3d 654, 63 Ill.Dec. 261, 437 N.E.2d 910, 913 (1982), *rev'd on other grounds,* 98 Ill.2d 324, 74 Ill.Dec. 629, 456 N.E.2d 131 (1983).

We have examined the United States Supreme Court's recent decision in *BMW of North America, Inc. v. Gore,* 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996) and are satisfied that it does not require reversal of the punitive damages verdict in this case. In *BMW,* the Supreme Court reversed a punitive damages award of $2,000,000.00 (reduced by a lower appellate court from an original jury verdict of $4,000,000.00) in a case involving actual property damage of $4,000.00 as so "grossly excessive" as to violate the Due Process Clause. That case involved one award to one plaintiff and did not address whether the Due Process Clause prohibits multiple awards to multiple plaintiffs injured as a result of a mass tort. In fact, as the cases cited *supra* indicate, the Supreme Court has been afforded numerous opportunities to address this issue and, to date, has declined to do so.

### B. Excessiveness/Standard of Review.

■ Recent decisions of the United States Supreme Court recognize that the Due Process Clause imposes a limit on awards of punitive damages. *BMW of North America, Inc. v. Gore, supra; TXO Production Corp. v. Alliance Resources Corp.,* 509 U.S. 443, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993); *Pacific Mut. Life Ins. Co. v. Haslip,* 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991). OCF only briefly asserts that the punitive damages award in this case was excessive. Instead, it focuses primarily on what it claims is a constitutionally infirm standard of review used in this jurisdiction to assess whether a particular award of punitive damages is excessive. Specifically, OCF cites *Davis v. Graviss,* Ky., 672 S.W.2d 928 (1984) and *Fowler v. Mantooth, supra,* as holding that once a trial judge makes a "first blush" de-

termination that a punitive damages award is not excessive, the only function of our appellate courts is to determine whether there is "any evidence" to support the verdict. In *Honda Motor Co., Ltd. v. Oberg*, 512 U.S. 415, 114 S.Ct. 2331, 129 L.Ed.2d 336 (1994), an amendment to the Oregon Constitution which prohibited any judicial review of the amount of a punitive damages award "unless the court can affirmatively say there is no evidence to support the verdict" was held to violate the Due Process Clause.

> Punitive damages pose an acute danger of arbitrary deprivation of property. Jury instructions typically leave the jury with wide discretion in choosing amounts, and the presentation of evidence of a defendant's net worth creates the potential that juries will use their verdicts to express biases against big businesses, particularly those without strong local presences. Judicial review of the amount awarded was one of the few procedural safeguards which the common law provided against that danger. Oregon has removed that safeguard without providing any substitute procedure and without any indication that the danger of arbitrary awards has in any way subsided over time. For these reasons, we hold that Oregon's denial of judicial review of the size of punitive damages awards violates the Due Process Clause of the Fourteenth Amendment.

*Id.*, 512 U.S. at 432, 114 S.Ct. at 2340–41.

We, of course, are bound by the United States Supreme Court's interpretation of what constitutes due process under the United States Constitution. *Wagers v. Sizemore*, 222 Ky. 306, 300 S.W. 918 (1928); *cf. Elmendorf v. Taylor*, 23 U.S. (10 Wheat.) 152, 6 L.Ed. 289 (1825). However, we do not agree that our system of judicial review amounts to "no review" of the size of punitive damages awards.

■ What we held in both *Davis v. Graviss* and *Fowler v. Mantooth, supra*, is that it is the primary function of the trial judge to determine whether, at "first blush" and in accordance with the criteria set forth in CR 59.01(d), (e) and (f), the verdict is excessive. On appeal, the trial judge's determination is considered presumptively correct and will be reversed only if it is "clearly erroneous." *Davis v. Graviss, supra* at 932; *Fowler v. Mantooth, supra* at 253.

The so-called "first blush" rule can be traced to *Huckle v. Money*, 2 Wils. 205, 95 Eng.Rep. 768 (C.P.1763), which held that an award of damages may be set aside by a reviewing court as excessive when the damages are "outrageous" and "all mankind at first blush must think so." *Id.* at 207, 95 Eng.Rep. at 769. CR 59.01 authorizes a trial judge to grant a new trial for, *inter alia*, any of the following grounds:

> (d) Excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice or in disregard of the evidence or the instructions of the court.

> (e) Error in the assessment of the amount of recovery whether too large or too small.

> (f) That the verdict is not sustained by sufficient evidence, or is contrary to law.

Application of these criteria requires a judicial review of the evidence and a fact-finding function on the part of the trial judge. The Oregon constitutional amendment struck down in *Honda Motor Co., Ltd. v. Oberg, supra*, prohibited judicial review by either a trial court or an appellate court.

■ Nor does the "clearly erroneous" standard of review constitute an abdication of our traditional role of appellate review. We have long held that for purposes of appellate review, a finding of fact of a trial judge ranks in equal dignity with the verdict of a properly instructed jury, *i.e.*, if supported by substantial evidence, it will be upheld, otherwise, it will be set aside as "clearly erroneous." *Daniel v. Kerby*, Ky., 420 S.W.2d 393 (1967); *Massachusetts Bonding & Ins. Co. v. Huffman*, Ky., 340 S.W.2d 447 (1960); *Yates v. Wilson*, Ky., 339 S.W.2d 458 (1960). In this jurisdiction, "substantial evidence" means evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men. *Kentucky State Racing Comm'n v. Fuller*, Ky., 481 S.W.2d 298, 308 (1972); *Smyzer v. B.F. Goodrich Chem. Co.*, Ky., 474 S.W.2d 367 (1971); *O'Nan v. Ecklar Moore Express, Inc.*, Ky., 339 S.W.2d 466 (1960).

Thus, even though the decision of the trial judge is accorded presumptive correctness on appeal, the appellate court still must review the evidence to determine whether that decision was clearly erroneous. Necessarily, the focus of this review is on the criteria set forth in CR 59.01, *supra*, and those factors set forth in *Hanson v. American Nat'l Bank & Trust Co., supra* at 310–11, as required by *TXO Production Corp. v. Alliance Resources Corp., supra*, 509 U.S. at 459–61, 113 S.Ct. at 2721–22, for determining whether punitive damages awarded in a particular case are excessive. We are satisfied that this duality of trial court and appellate court review affords a defendant the due process protections mandated in *Honda Motor Co., Ltd. v. Oberg, supra*.

On the basis of the above criteria and our review of the evidence as set forth in Part I of this opinion, we are satisfied that the trial judge was not clearly erroneous in determining that the punitive damages verdict returned in this case was not excessive.

### III. STATE–OF–THE ART INSTRUCTION.

KRS 411.310(2) provides as follows:

In any product liability action, it shall be presumed, until rebutted by a preponderance of the evidence to the contrary, that the product was not defective if the design, methods of manufacture, and testing conformed to the generally recognized and prevailing standards or the state of the art in existence at the time the design was prepared, and the product was manufactured.

■ OCF contends that once evidence was introduced that its product conformed to the state of the art existing at the time it was designed and manufactured, this statute entitled it to a jury instruction on that issue. The trial judge did not instruct the jury on this alleged defense.

Golightly responds that under Kentucky law, the only effect of a presumption is to require the person against whom the presumption operates to present evidence in rebuttal, whereupon the presumption disappears. KRE 301; R. Lawson, *The Kentucky Evidence Law Handbook*, § 10.05 III (3rd ed. Michie 1993). He cites *Sexton by and through Sexton v. Bell Helmets, Inc.*, 926 F.2d 331 (4th Cir.1991), *cert. denied*, 502 U.S. 820, 112 S.Ct. 79, 116 L.Ed.2d 52 (1991), a diversity action interpreting Kentucky law, which held that the only effect of KRS 411.310(2) is to entitle the manufacturer to a directed verdict if the plaintiff fails to present evidence in rebuttal of the presumption. OCF notes that in *Burke Enterprises, Inc. v. Mitchell*, Ky., 700 S.W.2d 789, 792, n. 1 (1985), we referred to "the defenses expressed in KRS 411.310" and that "Justice Palmore suggests that the statute is superfluous if it only reiterates the traditional plaintiff's burden of producing evidence to establish his claim," citing 2 Palmore, *Kentucky Instructions to Juries (Civil)* § 49.01 (Comment), pp. 385–86 (4th ed. Anderson 1989). OCF's characterization of Justice Palmore's· Comment is dubious at best; but we do note that unlike other statutes creating presumptions, KRS 411.130(2) requires rebuttal not simply by "evidence," but by a "preponderance of the evidence," which at least suggests a shifting of the burden of proof and the creation of a jury issue.[3] Nevertheless, this issue must await resolution in another case; for here, it was not preserved for appellate review.

As noted *supra* in Part I of this opinion, Golightly sued twenty different defendants in this case, all of whom except OCF either settled or were dismissed prior to trial. In addition, numerous other plaintiffs filed separate civil actions against the same defendants also claiming asbestos-related injuries. The trial judge entered a standing order with respect to all pending asbestos-related litigation which created a "Master File" as a repository for orders and documents common to all of those civil actions. Paragraph 8 of the standing order provided as follows:

Within 60 days of the entry of this order, all parties shall file master jury instruc-

---

**3.** KRE 301 recognizes an exception to the general rule regarding the effect of a presumption if

"otherwise provided by statute."

tions in the Master File. In subsequently filed cases, those parties who have not previously filed jury instructions in the Master File shall do so within 60 days prior to trial. Nothing in this provision shall be deemed to waive the right of any party to amend or file additional jury instructions in any case.

In response to this order, many of the defendants filed sets of tendered jury instructions in the Master File. Four defendants, A.W. Chesterton Co., Allied–Signal Corp., John Crane, Inc., and U.S. Mineral Products Co., included in their tendered instructions an instruction purporting to embody a state-of-the art defense. OCF tendered no instructions, but filed a document in the Master File containing the following two sentences:

> Comes the defendant, Owens–Corning Fiberglas Corporation, and pursuant to the Court's Standing Order regarding asbestos personal injury litigation, and hereby expressly adopts the Master Jury Instructions filed on behalf of all other defendants in these cases. Defendant Owens–Corning Fiberglas Corporation, pursuant to the terms of the Standing Order, reserves the right to amend or supplement jury instructions in this matter.

OCF never amended or supplemented this document and the record does not reflect that it ever tendered any specific instructions of its own. Nor does the record contain an objection by OCF to the instructions ultimately given to the jury. It contends that its "adoption" of all of the instructions tendered by all of the other defendants was sufficient to satisfy the requirements of CR 51(3):

> No party may assign as error the giving or the failure to give an instruction unless he has fairly and adequately presented his position *by an offered instruction* or by motion, or unless he makes objection before the court instructs the jury, stating specifically the matter to which he objects and the ground or grounds of his objection. (Emphasis added.)

Filing a document stating that a party "adopts" all of the instructions tendered by all of the other parties does not satisfy the requirement of CR 51(3), which requires that the desired instruction be "offered." That is especially true in a case like this with multiple defendants, some of whom tendered instructions and some of whom did not, and all of whom except OCF were no longer parties when the case went to trial. The trial judge would have needed extra-sensory perception to discern which instruction among literally sheaves of instructions tendered by now absent defendants was the one desired, but not specifically requested, by OCF in this case. If a party seeks to preserve error under CR 51(3) by tendered instruction instead of specific objection, that party must actually tender the desired instruction or specifically call the trial judge's attention to its existence at some point before the jury is instructed.

Accordingly, the judgment of the McCracken Circuit Court and the decision of the Court of Appeals are AFFIRMED.

All concur.