RENDERED: MARCH 3, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0285-MR

BERNARD WAYNE HARPE                                                    APPELLANT

v.
APPEAL FROM BOONE CIRCUIT COURT
HONORABLE LINDA R. BRAMLAGE, JUDGE
ACTION NO. 19-CI-00952

GEORGIANN MARIE HARPE                                                    APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; ACREE AND CETRULO, JUDGES.

ACREE, JUDGE: Appellant, Bernard Harpe (Husband) appeals the Boone Family

Court's February 10, 2021 findings of fact and conclusions of law dividing

property between Husband and Georgiann Harpe (Wife) following the parties'

divorce. Husband contests: (a) the classification of several items of property as

Wife's separate property, and (b) the division of marital property between the

parties. Finding no error, we affirm.

# BACKGROUND

Husband and Wife were married on May 20, 1975. Husband filed his petition for dissolution of marriage on July 18, 2019. The parties entered a separation agreement wherein they agreed to the disposition of most of their property. However, several disagreements still lingered. The parties still disagreed whether several items were marital or Wife's separate property; specifically, the parties disputed the status of a $56,044.71 balance of an investment account in Wife's name, a $225,118.52 balance in another of Wife's investment accounts, and a 1967 Ford Mustang with a value of $64,375.00. The parties also disputed an additional $21,191.00, which represents an amount remaining in an investment account after Wife withdrew money to purchase a condominium in Tennessee and after Wife received her proceeds from the sale of the marital home. Wife asserted each of these items are traceable to bequests following the death of her grandmother in 1993 and the death of her father in 2010.

The parties also disagreed as to the division of certain items of marital property. The parties disagreed as to the division of an IRA account in Husband's name with a value of $325,272.68, another IRA account in Husband's name with a value of $657,675.34, a third IRA account in Husband's name with a value of $53,633.64, an IRA account in Wife's name with a value of $19,305.01, a 401K

account in Wife's name with a value of $39.935.13, and a stock purchase plan in Wife's name with a value of $1,301.12.

The family court held a final hearing on January 6, 2021. The court considered evidence and heard testimony from Wife that all property claimed as nonmarital could be traced to distributions from the estates of her grandmother and her father. She testified she sought legal advice as to how to keep her inheritance as separate property prior to receiving any distribution from her grandmother's estate. On multiple occasions, Wife moved these distributions to different investment companies so that her property could remain with her financial advisors as they changed employers.

Distributions from her grandmother's estate were in the form of both stocks and cash, and Wife placed these distributions in accounts in her own name. Wife moved her accounts containing both her cash and stock distributions to a single investment company, Stephens, Inc. In 2000, she withdrew $21,000.00 from her account to purchase the Ford Mustang.

She testified she moved her inheritance from her grandmother's estate to Wells Fargo around the time of her father's death. Wife received distributions from her father's estate both in cash and in stocks. Because a portion of her inheritance from her father was a share of his USAA account, USAA required Wife to open an account for such distributions. She ultimately closed her USAA

account in 2012 and transferred the funds therein to her Wells Fargo account. She closed her Wells Fargo account in 2016 and transferred the balance to an account with U.S. Capital Advisors.

Wife withdrew a total of $243,794.13 from her U.S. Capital Advisors account between 2016 and 2019 to supplement her and Husband's retirement income. In 2020, she withdrew an additional $225,500.00 to purchase a condominium in Tennessee. Upon sale of the parties' marital home, Wife received $213,553.67 in proceeds, which she then deposited into a new account at Raymond James Financial. The parties had agreed the condominium was not subject to division since the withdrawal for its purchase was replaced with proceeds from the sale of the marital home.

Husband testified Wife always referred to her inheritance as her money, and that Wife handled the finances within the marriage. He also testified he never questioned Wife regarding the source of the funds for the Ford Mustang. The court also heard testimony from Wife's brother, who was an heir to their grandmother's estate and was the executor of their father's estate. He verified Wife's inheritance from the estates of their grandmother and father.

No party introduced evidence indicating any marital money was deposited into any of Wife's separate accounts or that any separate money was comingled with marital assets. Wife produced exhibits identifying distributions –

both cash and stock distributions – from the estates of her grandmother and her father.

The family court entered its decree of dissolution on February 10, 2021, as well as findings of fact and conclusions of law. It determined each item disputed as marital or separate property was indeed Wife's separate property, because each item could be traced to bequests made to Wife. The court also found that the total marital estate was $1,097,122.50, and determined a just division of the marital estate would be to divide the marital estate into equal $548,561.25 shares for both parties. The court also declined to award maintenance to Wife. Husband now appeals.

## STANDARD OF REVIEW

"In all actions tried upon the facts without a jury[,]" including actions for dissolution of marriage, "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." CR[1] 52.01. A factual finding is clearly erroneous if it is "manifestly against the weight of evidence." *Wells v. Wells*, 412 S.W.2d 568, 571 (Ky. 1967). Conversely, a factual finding is not clearly erroneous if substantial evidence supports it. *Hunter v. Hunter*, 127 S.W.3d 656, 659 (Ky. App. 2003) (citing *Owens-Corning Fiberglas Corp. v. Golightly*, 976 S.W.2d 409

---

[1] Kentucky Rules of Civil Procedure.

(Ky. 1998)). "Substantial evidence is evidence, when taken alone or in light of all the evidence, which has sufficient probative value to induce conviction in the mind of a reasonable person." *Id.* (citing *Golightly*, 976 S.W.2d at 414). However, appellate courts review legal issues *de novo*. *Id.*

## ANALYSIS

*Wife's Separate Property*

First, Husband argues the family court erred in determining Wife had traced each of her non-marital claims to her inherited property. We disagree, because substantial evidence supports the family court's determination regarding Wife's separate property.

"All property acquired by either spouse after the marriage and before a decree of legal separation is presumed to be marital property, regardless of whether title is held individually or by the spouses in some form of co-ownership[.]" KRS[2] 403.190(3). However, several exceptions to this presumption exist, including "[p]roperty acquired by gift, bequest, devise, or descent during the marriage and the income derived therefrom unless there are significant activities of either spouse which contributed to the increase in value of said property and the income earned therefrom[.]" KRS 403.190(2)(a). "A party claiming that property

---

[2] Kentucky Revised Statutes.

-6-

acquired during the marriage is other than marital property, bears the burden of proof." *Terwilliger v. Terwilliger*, 64 S.W.3d 816, 820 (Ky. 2002).

The record makes clear that Wife received bequests following the death of her grandmother in 1993 and the death of her father in 2010. Payments to Wife from both estates came in the form of stocks and cash, and were paid across multiple distributions. It is also apparent the character of these bequests has changed since Wife received them. Husband argues Wife did not meet her burden of proving the claimed separate property, in its current form, could be traced to the original bequests.

"'Tracing' is defined as '[t]he process of tracking property's ownership or characteristics from the time of its origin to the present.'" *Sexton v. Sexton*, 125 S.W.3d 258, 266 (Ky. 2004) (quoting *Tracing*, BLACK'S LAW DICTIONARY (7th ed. 1999)). Tracing is a judicially-created concept which allows a party to overcome KRS 403.190(3)'s presumption of marital property when property falling under one of KRS 403.190(2)'s exceptions has subsequently been moved or changed in form. *Id*. When tracing nonmarital property, "'the nonmarital claimant must trace the previously owned property into a presently owned specific asset.'" *Id*. (quoting 15 L. GRAHAM & J. KELLER, KENTUCKY PRACTICE, DOMESTIC RELATIONS LAW § 15.68 (2nd ed. 1997)).

Tracing is not shown where a party has simply brought separate property into the marriage; such party must also show "that he or she has spent his or her non-marital assets in a traceable manner during the marriage." *Polley v. Allen*, 132 S.W.3d 223, 229 (Ky. App. 2004). That said, our courts have acknowledged that "tracing to a mathematical certainty is not always possible[.]" *Terwilliger*, 64 S.W.3d at 820 (citing *Chenault v. Chenault*, 799 S.W.2d 575, 578 (Ky. 1990)). "While such precise requirements for nonmarital asset-tracing may be appropriate for skilled business persons who maintain comprehensive records of their financial affairs, such may not be appropriate for persons of lesser business skills or persons who are imprecise in their record-keeping abilities." *Chenault*, 799 S.W.2d at 578.

Nor is a party necessarily required to provide documentary proof to establish traceability. In *Chenault*, the Supreme Court of Kentucky found testimony to be sufficient to establish property as separate where there is no evidence presented to the contrary. 799 S.W.2d at 579. Therein, the appellant wife asserted she brought into the marriage shares of stock, as well as the proceeds of a home she owned prior to the marriage, other cash, and a treasury note. *Id.* at 577. This Court determined the wife failed to establish the property as separate because, though she testified as to how present property could be traced to property she claimed to have brought into the marriage, "she was unable to document such

testimony" and thus unable to prove traceability. *Id*. at 577-78. However, the Supreme Court of Kentucky determined wife had sufficiently traced present property to her original, separate property "in view of her testimony and the absence of evidence to the contrary[.]" *Id*. at 579. In relaxing the strict requirement of documentary proof to establish traceability, the Supreme Court noted it is the role of Kentucky's trial courts "to detect deception and exaggeration or to require additional proof when such is suspected." *Id*.

As Wife points out in her brief, no party produced evidence showing marital money was ever deposited into Wife's separate accounts. Wife set up separate accounts upon advice of counsel once she learned she stood to inherit substantial money from her grandmother's estate. Accordingly, we must determine on appeal whether substantial evidence exists tracing present property to Wife's bequests to overcome the presumption that property acquired after the date of marriage is marital.

We hold the family court did not err in determining Wife had adequately traced each item of contested property to her bequests. Wife produced ample evidence tracing her bequests as she moved them to different accounts. In addition to documentary evidence of distributions, Wife's testimony chronicled her bequests as they were transferred from one financial institution to another, and her brother's testimony established Wife received approximately $160,000.00 and

$600,000.00 from the estates of their grandmother and father, respectively. Because this testimonial evidence was uncontroverted and the family court apparently detected no deception or exaggeration which required it to demand additional proof, it was not error for the family court to rely upon testimony to reach its conclusions.

Further, her testimony supports withdrawal of $21,000.00 to purchase the Ford Mustang; conversely, Husband was unable to recall whether any marital funds were deposited into Wife's separate account and subsequently used to purchase the car and acknowledged he did not intend to claim the car as marital property because it is "her car." As to the contested $21,191.00, this amount constituted money remaining in one of Wife's separate accounts after withdrawing money to purchase her condominium in Tennessee and after receiving her proceeds from the sale of the marital residence. Though each of the contested items of property exists in different forms than when they were originally bequeathed to Wife, substantial evidence supports the family court's finding that Wife had adequately traced the property to her bequests.

*Division of Marital Property*

Husband also alleges the family court failed to follow the required analytical procedure for disposition of marital property. Under KRS 403.190(1), the family court is required to divide marital property "in just proportions

-10-

considering all relevant factors[,]" including "[v]alue of the property set apart to each spouse[.]" KRS 403.190(1)(a)-(d). Courts utilize a three-step process when dividing marital property under KRS 403.190(1). *Ensor v. Ensor*, 431 S.W.3d 462, 470 (Ky. App. 2013). First, the court determines whether each item of property is marital or nonmarital. *Id*. (citing *Gripshover v. Gripshover*, 426 S.W.3d 460, 465 (Ky. 2008)). Second, the court assigns each party their respective separate property. *Id*. Third, the court "equitably divides the marital property between the parties." *Id*. While the division of marital property must be equitable, "a 'just' division is not necessarily an equal division." *Cobane v. Cobane*, 544 S.W.3d 672, 684 (Ky. App. 2018) (citations omitted). "[T]he trial court has broad discretion to divide marital assets, and its determination of what constitutes a just division will not be disturbed absent an abuse of that discretion." *Id*. (citing *Hempel v. Hempel*, 380 S.W.3d 549, 553 (Ky. App. 2012)).

While the family court does have broad discretion in justly distributing marital property, and though the court in the present case divided the contested marital property equally between Husband and Wife, Husband asserts the family court failed to follow the required three-step procedure. He alleges the court divided the marital property without first assigning each party their non-marital property, meaning the court did not consider the amount of non-marital property each party possessed when it divided the marital property. As evidence of

-11-

this failure, Husband observes that the court's conclusions of law discusses division of marital property prior to its discussion of Wife's non-marital property.

Husband's argument is unavailing and does not demonstrate the family court failed to follow the three-step procedure. "The court and its officers are presumed to have properly performed their statutory duties." *Remmers' Executor v. Mayhugh*, 303 Ky. 366, 369, 197 S.W.2d 450, 452 (1946) (citing *Young v. Commonwealth*, 275 Ky. 98, 120 S.W.2d 772 (1938)). "When attack is made on this score, the contrary must be clearly and convincingly shown." *Id*. The court simply includes its discussion of Wife's separate property after its discussion of division of marital property in its conclusions of law, and there is no indication in the text itself showing the court's analysis was performed in an incorrect sequence. The family court's organizational choice is insufficient proof to overcome the presumption that the family court complied with applicable law, and thus we find no error in the court's analysis.

## CONCLUSION

For the foregoing reasons, we affirm the Boone Family Court's February 10, 2021 findings of fact and conclusions of law.


ALL CONCUR.

-12-

BRIEFS FOR APPELLANT:   BRIEF FOR APPELLEE:

Keith R. Morgan     William G. Knoebel
Florence, Kentucky     Florence, Kentucky