Shelby MILLER, Appellant/Cross–Appellee

v.

Robert HARRIS and Opal Harris, Appellees/Cross–Appellants.

No. 2009–CA–002330–ME, 2009–CA–002415–ME.

Court of Appeals of Kentucky.

Aug. 27, 2010.

Rodger G. Cox, Campbellsville, KY, for appellant/cross-appellee.

James L. Avritt, Jr., Lebanon, KY, for appellees/cross-appellants.

Before ACREE and NICKELL, Judges; HARRIS,[1] Senior Judge.

## OPINION

NICKELL, Judge:

Shelby Miller, the maternal grandmother of two minor children, appeals from a judgment of the Marion Circuit Court awarding custody of the children to their great uncle and aunt, Robert and Opal Harris.[2] Miller also appeals from an order denying her motion for a new trial but modifying the custody order to incorporate requested findings of fact. After thorough review of the briefs, the record and the law, we affirm.

We begin with a brief statement of the facts and procedural history of these two consolidated cases. Phyllis Coffey gave birth to four children before her death in a car accident in December of 2006. This appeal concerns custody of her two young-

---

1. Senior Judge William R. Harris sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes 21.580. Judge Harris is unrelated to the appellees/cross-appellants by blood or marriage.

2. The Harrises filed a notice of appeal but refer to themselves solely as "Appellees" and did not assert any new allegations in their brief. Therefore, we assume the Harrises abandoned their cross-appeal.

est children, a daughter (S.R.S.) born on May 31, 2003, and a son (T.P.S.) born on February 8, 2001. The children's father lives in Indiana and has not asserted parental rights.

S.R.S. was born a "crack baby." Within days of her birth, she was removed from her mother and placed with relatives where she lived the first year of her life. During this time, the Harrises spent considerable time with S.R.S. and provided for her. In contrast, Miller was not involved in the child's life. S.R.S. was returned to Coffey's care, but was removed again in September of 2004. At that time the Harrises were awarded temporary custody for about eight months. Miller did not attempt to contact or see the child during this time.

Within days of Coffey's death, the Harrises petitioned the Marion Circuit Court to grant them custody of S.R.S. T.P.S. was in someone else's care. Contrary to the Harrises' request, in February of 2007, temporary custody of both S.R.S. and T.P.S. was awarded to Debra Penick, Coffey's twin sister. Two months later, Penick was awarded permanent custody of both children. T.P.S. began living with Penick immediately. S.R.S. joined Penick's household at the end of the 2006–2007 school year. Until school ended, S.R.S. continued living with the Harrises. In June of 2007, the Harrises began weekend visitation with the children.

Penick tried to rear S.R.S. and T.P.S., but being a single mother who was working full-time and struggling to raise her own two children, she soon realized she could not care for her niece and nephew. Without court approval or knowledge, Penick took the children to Indiana on July 6, 2008, and gave physical custody of them to her mother, the children's maternal grandmother, Shelby Miller. On July 15, 2008, a court in Jennings County, Indiana, named Miller the children's guardian.

Things quickly went awry. On August 27, 2008, the Harrises moved the Marion Circuit Court to modify custody and set a visitation schedule. On September 12, 2008, the Marion Circuit Court ordered Penick to immediately return the children to Campbellsville, Kentucky, enroll them in local schools and make them available for weekend visitation with the Harrises. Four days later another order was entered stating that Miller had refused to release the children and asking Indiana law enforcement to assist in returning the children to Kentucky. The order went on to state that if Miller refused to cooperate, a warrant would issue and she would be arrested for custodial interference.

On September 23, 2008, an Indiana court issued an order on Miller's petition to terminate the Harrises' visitation. Following an emergency hearing, the court acknowledged having given Miller guardianship of the children in July of 2008, but declined to exercise further jurisdiction.

In November of 2008, Miller was allowed to file an intervening petition in the Marion Circuit Court to seek custody of the children. In February of 2009, the Marion Circuit Court entered an order permitting the Harrises to have telephone contact with the children for one hour every Tuesday night and visitation with them one weekend of every month. In May of 2009, Miller was found to be in contempt of court for willfully violating the February 2009 order regarding visitation and telephone access. As a result, an arrest warrant was issued.

While the Harrises sought to enforce their visitation rights in the Marion Circuit Court, Miller sought to terminate the award of visitation in the Indiana courts. On May 11, 2009, the Indiana court entered an order denying Miller's petition to

terminate visitation due to her "unclean hands by failing to appear in the Marion Circuit Court (Kentucky) on May 4, 2009."

On July 30, 2009, the Marion Circuit Court convened a custody hearing at which the Harrises and Miller testified along with other witnesses. Miller brought T.P.S. to the courthouse that day and asked the court to interview him, however, she did not bring S.R.S. with her. Counsel for the Harrises had previously asked that both children be made available to speak with the court. After confirming the age and whereabouts of both children, the court decided it would not interview either child.

The court entered twelve pages of findings of fact, conclusions of law and judgment on October 22, 2009. Thereafter, Miller moved the court to order a new trial or alternatively, amend the judgment and add new findings of fact. The court denied the motion for a new trial, but did amend the judgment to incorporate additional findings of fact. This appeal followed. We affirm.

■ Kentucky Rules of Civil Procedure (CR) 52.01 directs that "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." A judgment "supported by substantial evidence" is not "clearly erroneous." *Owens–Corning Fiberglas Corp. v. Golightly,* 976 S.W.2d 409, 414 (Ky.1998). Substantial evidence is defined as "evidence of substance and relevant consequence, having the fitness to induce conviction in the minds of reasonable men." *Kentucky State Racing Commission v. Fuller,* 481 S.W.2d 298, 308 (Ky.1972).

■ In reviewing the trial court's decision, we must determine whether it abused its discretion by awarding custody of the children to their great uncle and aunt. An abuse of discretion occurs when a trial court enters a decision that is arbitrary, unreasonable, unfair, or unsupported by sound legal principles. *Goodyear Tire and Rubber Co. v. Thompson,* 11 S.W.3d 575, 581 (Ky.2000); *Commonwealth v. English,* 993 S.W.2d 941, 945 (Ky.1999). We will not substitute our own findings of fact unless those of the trial court are "clearly erroneous." *Reichle v. Reichle,* 719 S.W.2d 442, 444 (Ky.1986). Further, with regard to custody matters, "the test is not whether we would have decided differently, but whether the findings of the trial judge were clearly erroneous or he abused his discretion." *Eviston v. Eviston,* 507 S.W.2d 153, 153 (Ky.1974); *see also Cherry v. Cherry,* 634 S.W.2d 423 (Ky.1982).

■ When the choice of custodian[3] is between non-parents, as in this case, Kentucky courts seek the result that is in the best interests of the child. Kentucky courts have not expressed a preference for relatives in non-parent custody cases. *Williams v. Phelps,* 961 S.W.2d 40 (1998). Therefore, Miller does not have an automatic advantage by being the children's maternal grandmother. Additionally, Robert, by being the maternal great uncle of the children is also a blood relative. Further, KRS 403.270 provides, in relevant part:

(2) The court shall determine custody in accordance with the best interests of the child and equal consideration shall be given to each parent and to any *de facto* custodian. The court shall consider all relevant factors including:

(a) The wishes of the child's parent or parents, and any *de facto* custodian, as to his custody;

---

**3.** There is no *de facto* custodian in this case.

(b) The wishes of the child as to his custodian;

(c) The interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child's best interests;

(d) The child's adjustment to his home, school, and community;

(e) The mental and physical health of all individuals involved;

. . . .

(3) The court shall not consider conduct of a proposed custodian that does not affect his relationship to the child.

Close reading of the statute reveals the trial court must consider ALL relevant factors, not just those listed in KRS 403.270(2). After considering the factors enumerated in the statute, the trial court concluded it was in the best interests of S.R.S. and T.P.S. to be in the sole custody of the Harrises with Miller having reasonable visitation. Our task is to determine whether that conclusion is supported by substantial evidence.

We focus first on Miller. She is a sixty-year-old woman who has lived in public housing in Indiana for the last eight years. She has not held a paying job in the last two decades and relies upon $676.00 in monthly supplemental security income benefits plus Medicaid and food stamps. She does not have reliable transportation. She is currently single but has been married and divorced four times and is the mother of four children, one of them deceased. When she divorced the father of her children in 1985, he received custody of all four children. Miller has resided in Indiana for all but one year of the children's lives. She testified T.P.S. had lived with her for four years while Coffey was dealing with substance abuse issues but she offered no corroborating evidence or dates.

Miller has a long history of substance abuse convictions including: driving under the influence (DUI), third offense, in December of 1997; DUI, second offense, in June of 1994; DUI, first offense, in March of 1994; alcohol intoxication in a public place in November of 1994; and two counts of trafficking in a controlled substance (Xanax) within 1,000 yards of a school in September of 1995. She was given a two-year sentence that was probated for two years on the trafficking conviction. She was also convicted of theft by deception.

Coffey's twenty-year-old daughter, Renee Baldwin, testified she had observed Miller in July of 2007 smoke marijuana while S.R.S. and T.P.S. were in an adjoining room. She also testified she had seen Miller huff paint. Contrary to Baldwin's testimony, Miller testified she has been sober for four years and had not used marijuana in the last seven years.

Baldwin lives in Campbellsville where she is a college student. She is a half-sister to S.R.S. and T.P.S. and is very close to them. For a period of time, she saw her half-siblings on a weekly basis. Her ability to interact with them would suffer if custody were awarded to Miller because they would be living in Indiana.

Miller's health is suspect. Each day she takes eight prescribed medications for heartburn, headaches, hypertension, high cholesterol and diabetes. More than twenty years ago she was declared disabled by the Social Security Administration due to arthritis, high blood pressure and other ailments.

Miller has repeatedly violated court orders by thwarting the Harrises weekly telephone contact, weekend visitation, and Spring Break visitation with the children. She refused to accept phone calls from the Harrises, changed her phone number and

did not provide the new number to the Harrises. When Penick was ordered by the Marion Circuit Court to return the children to Kentucky and enroll them in school, Miller refused to release them.

We turn our attention now to the Harrises who have been married to one another for more than fifty years and have two adult children, four grandchildren and two great grandchildren. Robert is 68 years old. His brother, Melvin, was the children's grandfather; Robert is their great uncle. Robert takes medication for an inner ear problem and one daily pill for hypertension. He is retired from Buckhorn Coal and the City of Campbellsville. He and Opal live in Campbellsville, Kentucky, in the same three-bedroom home they have owned for thirty-eight years.

Opal is 70 years of age. She retired from Fruit of the Loom after thirty-five years of service. She takes one pill for high blood pressure. Together, Opal and Robert draw about $2,700.00 each month in Social Security benefits and private pension/retirement benefits. Neither has been convicted of any offense but a traffic infraction and neither has a history of illegal drug or alcohol use. Opal was close to Coffey and took care of S.R.S. during various periods of her life. Opal routinely took S.R.S. to church and saw her during the week. In 2004, she and Robert had temporary custody of S.R.S. for about eight months. The Harrises did not have contact with T.P.S. while they had custody of S.R.S. They did not have any contact with Coffey or Miller during this time either.

■ On appeal, Miller alleges the trial court made four mistakes in awarding custody to the Harrises. First, she claims the court misapplied KRS 403.270 in awarding custody to the Harrises. In her brief, she sets forth KRS 403.270 in its entirety but fails to explain how the trial court abused

its discretion or clearly erred in awarding custody to the Harrises. In its conclusions of law, the trial court explained its analysis of the statutory factors it considered in determining the custody award that was in the best interests of S.R.S. and T.P.S. The statutory factors considered included health of the parties; the children's interaction with family members; and the children's adjustment to home, school and community. Two statutory factors were not considered—the wishes of the biological parents were unknown because the mother was deceased and the father did not testify; the children's wishes were not considered due to their young ages. Finally, no party alleged *de facto* custodian status and there were no allegations of domestic violence. The trial court's award of custody to the Harrises is fully supported by the record and therefore does not constitute an abuse of discretion or clear error.

■ Miller's second argument is that the trial court erred in failing to interview the children. We begin by noting that only one of the children, T.P.S., was brought to the courthouse during the custody hearing on July 30, 2009, and made available to speak with the court. Counsel for the Harrises was adamant in arguing that he had previously asked that both children be made available to talk with the court, however, Miller conveniently did not bring S.R.S. to the hearing. Counsel for the Harrises further suggested Miller was willing to let the court interview T.P.S. because he would likely say he wanted to stay with Miller. We also note a lack of precision in Miller's statement of preservation of this issue. Miller says that during the custody hearing she requested "the Court to interview the children[.]" We have listened to the hearing in its entirety. Miller asked the court to interview T.P.S.; she never asked the court to speak with

S.R.S. and never asked the court to interview the "children."

At the time of the hearing, S.R.S. was six years of age and T.P.S. was eight. Miller has cited no authority requiring a trial court to interview a child; she relies solely upon KRS 403.270(2)(b) which directs a court to consider the child's wishes in awarding custody. However, the Harrises have cited us to *Brown v. Brown,* 510 S.W.2d 14, 16 (Ky.1974), where in a divorce proceeding, the trial court chose not to interview a seven-year-old boy. In affirming the judgment, the appellate court wrote, "[i]t is discretionary as to whether or not the trial judge should interview a child. We cannot say that the trial court abused its discretion in this matter." *Id.* The same holds true in the case at bar.

Miller's third assertion is that the court gave insufficient weight to her testimony that the children lived in and attended school in Indiana with Miller for more than a year and were visited weekly by their father during that time. Earlier in this opinion we cited *Golightly* for the proposition that the trial court is in the best position to weigh witness credibility. While there was some evidence that the children lived in Indiana for a period of time and attended school there, it cannot be ignored that by order of the Marion Circuit Court these children were to be in the custody of Debra Penick in Kentucky during this time. Additionally, there was considerable testimony about the amount of time the children, particularly S.R.S., had spent with the Harrises in Kentucky and the close bond the children shared with the older half-sister, a college student in Campbellsville. In light of all the evidence, we cannot say the trial court's award of custody to the Harrises was clear error or an abuse of discretion.

Miller's final complaint is that the trial court considered aspects of her conduct that did not affect the children. Miller found it particularly egregious that counsel for the Harrises focused on her significant history of substance abuse. We disagree. KRS 403.270 directs the trial court to consider "relevant factors." Importantly, it does not restrict the court's consideration to events occurring within the children's lives or within a particular span of time. Thus, any factor that affects a potential custodian's "relationship to the child" is to be considered.

S.R.S. was born a crack baby. She was removed from her mother's custody at least three times because of substance abuse issues. Miller herself has a history of abusing drugs and alcohol, including three DUI convictions, one conviction for alcohol intoxication in a public place, and one two-count conviction for trafficking in Xanax. These were not childhood dalliances. These crimes occurred well into adulthood. As recently as 2007, her granddaughter, Renee Baldwin, watched her smoke marijuana while S.R.S. and T.P.S. were in an adjoining room of her home in Indiana. This testimony contradicted Miller's testimony at the custody hearing that she had not smoked marijuana in the last seven years. Miller also testified she had been sober for the last four years. Miller may disagree, but these convictions are part and parcel of who she is and the type of influence she may exert over S.R.S. and T.P.S. The trial court did not err in considering her criminal record in awarding custody.

Based upon the foregoing, we affirm the judgment of the Marion Circuit Court.

ALL CONCUR.