RENDERED:  AUGUST 21, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-001712-ME

LONA EMBREE                                                                    APPELLANT


                          APPEAL FROM KENTON CIRCUIT COURT
v.                        HONORABLE DAWN M. GENTRY, JUDGE
                          ACTION NO. 19-CI-00844


JAYME RICE                                                                      APPELLEE



OPINION
AFFIRMING

** ** ** ** **

BEFORE:  GOODWINE, K. THOMPSON, AND L. THOMPSON, JUDGES.

THOMPSON, L., JUDGE:  Lona Embree appeals from the decision of the Kenton

Family Court which granted custody of a minor child to Jayme Rice and granted

Ms. Embree visitation.  Although we find that the family court made one erroneous

finding of fact, we conclude that it was harmless error and affirm the judgment of

the family court.

## FACTS AND PROCEDURAL HISTORY

This case revolves around the custody of a minor child, age 11 (hereinafter referred to as Child),[1] whose parents are both deceased. Emergency custody of Child was granted to Appellee, Child's maternal aunt, and she was eventually granted temporary custody. Appellant, Child's paternal grandmother, later filed a petition for custody. A hearing was held over two days where Appellant, Appellee, Child, and two therapists testified. The family court ultimately found that it would be in Child's best interests to remain in the custody of Appellee. The court also granted Appellant specific visitation rights.

After the entry of the court's custody order, Appellant filed a motion to alter, amend, or vacate the court's order. Appellant asked for more specific findings of fact and conclusions of law and pointed out alleged instances of incorrect findings made by the court. The court then entered an amended order setting forth more specific findings. This appeal followed.

## ANALYSIS

Before we begin the analysis of Appellant's arguments, we must first address some motions raised by Appellee in her brief. Appellee asks that this Court dismiss Appellant's appeal because it was untimely filed. In the alternative, Appellee asks that we strike Appellant's brief because it did not adhere to the rules

---

[1] As this case revolves around a minor child, we will not use the child's name.

found in Kentucky Rules of Civil Procedure (CR) 76.12(4). As to the motion to dismiss the appeal for being untimely, the issue was previously raised before the Court in a separate motion filed by Appellee on March 25, 2020. On July 1, 2020, this Court entered an order denying the motion. We see no reason to revisit this issue or overturn the previous ruling of this Court.

We now move to the motion to strike the brief for failing to follow CR 76.12(4). Specifically, Appellee argues that Appellant's brief violated CR 76.12(4)(c)(iii)[2] and (iv).[3] "Our options when an appellate advocate fails to abide by the rules are: (1) to ignore the deficiency and proceed with the review; (2) to strike the brief or its offending portions, CR 76.12(8)(a); or (3) to review the issues raised in the brief for manifest injustice only[.]" *Hallis v. Hallis*, 328 S.W.3d 694, 696 (Ky. App. 2010) (citation omitted). Here, Appellee is correct that Appellant's brief did not follow the requirements of CR 76.12(4)(c)(iii) and (iv); however, because this case involves the custody of a minor child, we choose to ignore the deficiency and proceed with a review on the merits.

We now move on to the arguments presented by Appellant. Appellant's first argument is that the family court based its custody decision on a

---

[2] Briefs shall have a statement of points and authorities which sets forth the arguments and the authorities cited in the brief.

[3] Briefs shall have a statement of the case which sets forth the necessary facts and procedural history.

mistaken fact. Appellant's second argument is that the family court erred in discounting Child's testimony. The first two arguments are intertwined; therefore, we will address them together.

After Child began living with Appellee, he expressed a desire to continue doing so to Appellee, his regular therapist, and the psychologist Appellant hired to examine him. Child made these statements up until the day before the final hearing in the custody matter. On that day he told his regular therapist that he wanted to live with Appellant. On the last day of the custody hearing, Child was interviewed by the trial judge and Child informed the judge that he wanted to live with Appellant.

In its order, the family court ultimately found Child's testimony to not be credible. The court believed Appellant might have been coercing him to change his preference as to where he wanted to live. In paragraph 8 of the family court's original custody order, and in paragraph 17 of the amended order, the family court stated, "Dr. Connor[4] testified that [Child] was vulnerable to suggestibility. [Child] had spent the weekend with [Appellant] prior to his most recent counseling session with Ms. Brittingham[5] and prior to the final hearing of testimony in this case." In paragraph 16 of the original order, and paragraph 29 of the amended

---

[4] The psychologist hired by Appellant to examine Child.

[5] Child's regular therapist.

order, the court stated,. "This Court has concerns that [Appellant] is coaching or unduly influencing [Child]." Finally, the following paragraphs in the amended order are relevant to our discussion:

> 13. After the death of his father, [Child] began mental health treatment with Kerrie Brittingham. During his therapy with Ms. Brittingham, [Child] consistently stated he wanted to live with [Appellee]; and that the person he wanted to be with when he was scared, happy, or sad was [Appellee]. However, the day before the final hearing, [Child] told Ms. Brittingham that he wanted to live with [Appellant].

> 14. At the most recent hearing, [Child] testified he wanted to live with [Appellant]. He also testified he did not want to have to make the decision regarding where he would live. [Child's] testimony regarding with whom he wanted to live was not persuasive to this court. It was very difficult for [Child] to discuss this choice.

> 15. When weighing the consistent statements [Child] made to his therapist against the statements he made during trial testimony, the Court finds his prior statements to his therapist more credible and a better indicator of what he truly wants.

Appellant argues that Child was not with her the week prior to his counseling session and the final hearing date, that the family court erred in making this finding, and that the court had no evidence suggesting Appellant was coercing Child's testimony about where he wanted to live. In other words, Appellant is arguing that the family court made an erroneous finding of fact and there was no evidence to support the court's decision to discount Child's testimony.

Appellee agrees with Appellant that the family court's finding at issue was erroneous; however, Appellee argues that this error was harmless and that there was sufficient evidence to find Child's testimony as not credible. We agree with Appellee.

> Kentucky Rules of Civil Procedure (CR) 52.01 directs that "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." A judgment "supported by substantial evidence" is not "clearly erroneous." *Owens-Corning Fiberglas Corp. v. Golightly*, 976 S.W.2d 409, 414 (Ky. 1998). Substantial evidence is defined as "evidence of substance and relevant consequence, having the fitness to induce conviction in the minds of reasonable men." *Kentucky State Racing Commission v. Fuller*, 481 S.W.2d 298, 308 (Ky. 1972).

> In reviewing the trial court's decision, we must determine whether it abused its discretion by awarding custody of the children to [the person at issue]. An abuse of discretion occurs when a trial court enters a decision that is arbitrary, unreasonable, unfair, or unsupported by sound legal principles. *Goodyear Tire and Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000); *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999). We will not substitute our own findings of fact unless those of the trial court are "clearly erroneous." *Reichle v. Reichle*, 719 S.W.2d 442, 444 (Ky. 1986). Further, with regard to custody matters, "the test is not whether we would have decided differently, but whether the findings of the trial judge were clearly erroneous or he abused his discretion." *Eviston v. Eviston*, 507 S.W.2d 153, 153 (Ky. 1974); *see also Cherry v. Cherry*, 634 S.W.2d 423 (Ky. 1982).

*Miller v. Harris*, 320 S.W.3d 138, 141 (Ky. App. 2010).

CR 61.01 states:

> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

"When considering a claim of harmless error under CR 61.01, the court determines whether the result probably would have been the same absent the error or whether the error was so prejudicial as to merit a new trial." *CSX Transp., Inc. v. Begley*, 313 S.W.3d 52, 69 (Ky. 2010) (footnotes omitted).

Here, it is clear that the court made a clearly erroneous finding of fact. Child did not spend the weekend before the final day of the hearing with Appellant. Child had last spent time with Appellant two weeks prior to the final day of the hearing. While this finding was erroneous, we conclude it does not necessitate a reversal nor does it negate the court's finding that Child's testimony was not credible. Child had been expressing his desire to remain with Appellee for months. In addition, Dr. Connor testified that the court should rely on Child's prior statements about where he wanted to live. Furthermore, Child expressed a

desire not to have to decide where he wanted to live and the court stated that this decision was hard on Child. The court is in the best place to judge the credibility of a witness; therefore, the court did not err in discounting Child's testimony.

Finally, the erroneous finding was harmless because, overall, there was substantial evidence to support awarding custody to Appellee. The factors a court must consider when determining what is in a child's best interests are found in Kentucky Revised Statutes (KRS) 403.270(2). Those factors lean more in favor of Appellee. The court found that both parties loved Child and that Child had a good relationship with both parties and their respective families. The court also found no issues with the physical health or financial situations of either party. Additionally, the court found that both parties had cared for Child in the past, but that Appellee had more frequent experiences and time with Child than Appellant. The court further found that Child had improved emotionally and scholastically while in Appellee's care. The court also specifically mentioned Dr. Connor's testimony that changing Child's home and school could harm Child due to the losses he has already experienced with the death of his parents.

While either party would be a good caregiver for Child, the court ultimately found that Child should remain in Appellee's custody. This is supported by substantial evidence in the record. This would remain the case even if we ignored the court's erroneous finding of fact and the court's finding that Appellant

might have coerced Child into stating he wished to live with her. The error made by the court was harmless.

Appellant's third and final argument is that the family court failed to examine the motivation of the parties in seeking custody of Child. Appellant raised the issue of Appellee's financial motivation during the custody hearing. She claimed that Appellee only sought to get custody of Child so that she could have access to his Social Security payments. This argument is without merit. The family court specifically discussed Appellant's theory that Appellee was after Child's Social Security payments. The family court clearly considered Appellant's allegation that money was a motivator in this case.

## CONCLUSION

Based on the foregoing, we affirm the judgment of the family court. While the family court did make an erroneous finding of fact, it was a harmless error because the overall evidence presented in this case supported the court's judgment that Appellee should be awarded custody of Child.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Thomas L. Rouse
Ft. Mitchell, Kentucky

BRIEF FOR APPELLEE:

Melissa H. Doss
Ft. Mitchell, Kentucky