RENDERED: AUGUST 5, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1117-MR

GLENN KEITH GREENFIELD, SR.                                APPELLANT

v.             APPEAL FROM TRIGG CIRCUIT COURT
               HONORABLE C.A. WOODALL, II, JUDGE
               ACTION NO. 19-CI-00014

DONNA SUE WALLEN GREENFIELD
(NOW DONNA SUE WALLEN)                                     APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; CETRULO AND K. THOMPSON, JUDGES.

CLAYTON, CHIEF JUDGE: Glenn Keith Greenfield, Sr., appeals from the Trigg

Circuit Court's findings of fact, conclusions of law, and orders entered in the

dissolution of his marriage to Donna Sue Wallen Greenfield, now Donna Sue

Wallen. The main areas of dispute are the trial court's division of the marital

assets, the assignment of marital debt, and the award of maintenance to Donna. Having reviewed the record and the applicable law, we affirm.

Glenn and Donna were married in 1989 and separated on September 8, 2018. Both parties have children from prior marriages but do not have any children together. Glenn filed a petition for dissolution of marriage on January 31, 2019. At the time of the final hearing in January 2021, Glenn was sixty years of age and Donna was sixty-two.

Since 1995, Glenn, who completed high school, has been a self-employed contractor. In 2004, his business was incorporated as Greenfield Steel Buildings and Construction. Donna, who has an associate's degree in science, held a variety of jobs throughout the marriage, such as a deli worker at a grocery and a shift leader at a restaurant. At the time of the separation and dissolution, she was employed as a registration clerk at a hospital.

The parties agreed, based on a professional appraisal, that the total value of Glenn's business assets was $40,825. The family court awarded Glenn $36,375, the total value of those assets minus a Honda ATV and mower valued at $2,200 and $2,250, which were awarded to Donna. The business owed longstanding debts of $16,923.55 to Fourshee Building Supply, and $9,203.51 to Light's Plumbing & Electric, Inc.; these were assigned to Glenn.

Glenn and Donna owned and resided in a mobile home (the Oak Grove residence) located on approximately six acres in Cadiz, Kentucky. The land belonged to Donna prior to the marriage and she and Glenn built and paid for the home during their marriage. When they separated in 2018, Glenn moved into a home he rented for $500 per month. Donna continued to live in the Oak Grove residence. Donna and Glenn stipulated that the fair market value of the Oak Grove property was $111,000 and that Donna should be restored her non-marital interest of $25,000. The remaining equity of $86,000 was determined to be marital property. The marital residence was awarded to Donna. There was a second mortgage on the property, used to obtain a loan for the Tanyard Road property described below, with a balance of $10,937.73 at the time of the separation; at the time of the bench trial, the balance had been reduced to $1,852.30. This debt was assigned to Donna.

The couple owned another home on Tanyard Road (the Tanyard Road property). Donna had inherited 1/6 of the Tanyard Road property from her mother and she and Glenn purchased the remaining 5/6 of the property using the Oak Grove property as security for the loan. They rented the property to Donna's brother for $300 per month. Donna continued to receive the rent from her brother following the separation. The rent almost covered the monthly mortgage payment of $374. Glenn paid the $74 difference between his brother-in-law's rent and the

-3-

mortgage on the Tanyard Road property from the date of the separation, September 8, 2018, until March 2019. The appraised value of the Tanyard Road property was $30,000. The trial court found Donna's non-marital 1/6 interest to be $5,000. Minus this non-marital interest and the remaining mortgage debt, the equity in the property was $23,148. The property was awarded to Donna. Glenn was not credited for paying the monthly $74 difference in the mortgage or for paying one half of the property tax and insurance on Oak Grove residence in 2019 and 2020.

The parties owed federal and state tax debt due to Glenn's failure to pay annual quarterly withholding tax on his business. The amount remaining to be paid to the Internal Revenue Service (IRS) was $9,635.76. Glenn had been paying $200 per month to the IRS and Donna had been paying $100. The trial court's disposition reflected this division by assigning 2/3 of that debt ($6,424) to Glenn and 1/3 ($3,212) to Donna. Neither party knew the exact amount of the state tax debt, but it was assigned to Glenn in its entirety.

Additionally, Glenn was assigned debt of $5,000 for his medical bills and $5,200 for his Discover credit card; Donna was assigned $5,088 in debt consisting of her medical bills, credit card debts, and AT&T and Direct TV bills.

Glenn was awarded a marital Edward Jones IRA in the amount of $5,821. Donna was awarded some shares of stock from her former employer with a value of $2,991.

Glenn was awarded a 1994 Ford Ranger truck with $1,425 in equity and a motorcycle with a value of $2,685. Donna was awarded her 2006 Toyota Prius with an approximate fair market value of $2,125.

The trial court calculated that its division of the assets resulted in Donna receiving approximately 71 percent of the marital estate and Glenn receiving approximately 29 percent. The court believed that a just division would entail Donna receiving 60 percent and Glenn receiving 40 percent. To achieve this division, Donna was ordered to pay Glenn a total of $18,877.

During the course of the dissolution proceedings, Donna filed a motion seeking temporary maintenance. Following a hearing on February 10, 2020, the family court ordered temporary maintenance in the amount of $700 per month. At the final hearing, on January 21, 2021, Glenn admitted he had not paid maintenance for April, May, June, and July 2020, claiming he could not afford to do so.

The trial court entered its findings of fact, conclusions of law, and final order on August 2, 2021. It found that Glenn had "paid multiple personal expenses out of his business account to make his profit less (or his loss more) in order to impoverish himself and excuse himself from paying maintenance to [Donna]. Despite his denials, [Donna] showed that [Glenn] had retained cash proceeds from checks where people paid him before depositing and reporting only

the deposits for income tax purposes." The trial court further found that Glenn did not deposit all checks from the business, never kept separate ledger sheets for individual jobs, carries no accounts receivable, and has no employees, although he pays his sons and others as subcontractors. The trial court found that Glenn's monthly after-tax income was $3,079 but emphasized that he had additional unreported cash income.

The trial court found that Donna's employment opportunities are limited by her health conditions and work experience. She is unable to stand for long periods and cannot lift over 20 pounds. She has no retirement plan through her current place of employment. It awarded Donna maintenance in the amount of $500 per month for sixty months.

Glenn filed a motion to alter, amend, or vacate, raising numerous issues. Donna did not file a response. The family court thereafter entered an order granting Glenn's motion only insofar as it amended its findings relating to a vehicle and handgun which are not at issue here.

This appeal by Glenn followed.

"[I]n dissolution of marriage actions, a trial court's division of the parties' property requires a three-step process: (1) the trial court first characterizes each item of property as marital or nonmarital; (2) the trial court then assigns each party's nonmarital property to that party; and (3) finally, the trial court equitably

divides the marital property between the parties." *Travis v. Travis*, 59 S.W.3d 904, 908-09 (Ky. 2001) (footnotes omitted).

Kentucky Revised Statute (KRS) 403.190(3) creates a presumption that all property acquired after the marriage is marital property. *See Sexton v. Sexton*, 125 S.W.3d 258, 266 (Ky. 2004) "A party claiming that property acquired during the marriage is other than marital property, bears the burden of proof." *Terwilliger v. Terwilliger*, 64 S.W.3d 816, 820 (Ky. 2002).

When dividing the marital property, the family court is required by KRS 403.190(1) to do so "without regard to marital misconduct in just proportions" after "considering all relevant factors" which include:

> (a) Contribution of each spouse to acquisition of the marital property, including contribution of a spouse as homemaker;
>
> (b) Value of the property set apart to each spouse;
>
> (c) Duration of the marriage; and
>
> (d) Economic circumstances of each spouse when the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children.

KRS 403.190(1).

On appeal, we review the trial court's findings of fact only to determine if they are clearly erroneous. Kentucky Rules of Civil Procedure (CR)

52.01. A factual finding is not clearly erroneous if it is supported by substantial evidence. *Owens-Corning Fiberglas Corp. v. Golightly*, 976 S.W.2d 409, 414 (Ky. 1998).

The trial court's division of the marital property will not be disturbed except for an abuse of discretion. *Neidlinger v. Neidlinger*, 52 S.W.3d 513 (Ky. 2001), *overruled on other grounds by Smith v. McGill*, 556 S.W.3d 552 (Ky. 2018). "An abuse of discretion occurs when a trial court enters a decision that is arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Miller v. Harris*, 320 S.W.3d 138, 141 (Ky. App. 2010).

When we review the decision of the family court, "[t]he test is not whether the appellate court would have decided it differently, but whether the findings of the family court are clearly erroneous, whether it applied the correct law, or whether it abused its discretion." *Coffman v. Rankin*, 260 S.W.3d 767, 770 (Ky. 2008).

Glenn argues that the trial court's division of assets and assignment of debts did not comply with the statutory requirement that marital property and debts should be divided in "just proportions." KRS 403.190(1). Specifically, he contends that the trial court failed to account for the fact that Donna was restored her non-marital property of $25,000 in the Oak Grove residence and $5,000 in the Tanyard Road property, whereas he did not receive any significant non-marital

property. He points out that the total marital estate was valued at $166,395, which with the addition of Donna's non-marital property equaled $196,395. He contends that it was inequitable that Donna received 15 percent of the total property owned by the parties as her separate non-marital property.

But KRS 403.190(1) requires the marital property to be divided in just proportions; it does not require the trial court to consider the amount of non-marital property in making this division. The trial court equitably divides the marital property between the parties only after it has assigned each party's non-marital property to that party. In direct contrast, the statute governing the award of maintenance does expressly direct the court to consider all the financial resources of the spouse seeking maintenance, including the marital property apportioned to him. KRS 403.200(1)(a) and (2)(a). Under our clear statutory authority, the trial court did not err when it did not factor Donna's non-marital property into its division of the marital property.

Glenn also challenges the trial court's decision to award 60 percent of the marital assets to Donna and 40 percent to him. He contends that the trial court failed to explain how it applied the statutory factors set forth in KRS 403.190(1) in arriving at this division, and claims the statutory factors favor an equal division because both parties contributed to the acquisition of the assets during the lengthy marriage. He contends the 60/40 division was particularly arbitrary and

unreasonable because his economic circumstances at the time of the dissolution were less advantageous than Donna's and he reiterates that Donna received a substantial amount of non-marital property.

The Kentucky Supreme Court has unequivocally rejected the presumption that marital property should be divided equally, stating: "the courts have a legislative mandate to divide marital property in accordance with the standards set out in the statute. It is significant to us that the statutes do not mention 'presumptions'; and in the absence of this, we are of the opinion the legislative mandate is binding upon us and that presumptions in the division of marital property should not be indulged in at all." *Herron v. Herron*, 573 S.W.2d 342, 344 (Ky. 1978). Simply put, KRS 403.190 "does not dictate that marital property be divided equally." *Quiggins v. Quiggins*, 637 S.W.2d 666, 669 (Ky. App. 1982).

In deciding to award Donna 20 percent more of the marital estate, the trial court relied on extensive findings about the parties' earning ability and their retirement prospects which relate directly to KRS 403.190(1)(d), which directs the court to consider the "[e]conomic circumstances of each spouse when the division of property is to become effective[.]" The findings which weighed most heavily in its analysis were Donna's relatively modest income, her limited work experience, lack of a pension beyond social security, her age, and her health restrictions, which

include an inability to perform a job that requires standing. This evidence fully supports the trial court's decision to award Donna a larger share of the marital estate.

Glenn further contends that he was unfairly saddled with the lion's share of the marital debt, whereas Donna was able to pay off most of her credit card debt during the separation because she was receiving $700 in maintenance. Glenn's assigned marital debt consisted of 2/3 of the IRS debt, $6,424; $5000 in medical bills, and $5200 in credit card debt. The trial court also added the business debts of $16,923.55 to Fourshee and $9,203.61 to Light's, both of which it characterized as non-marital. Donna's assigned marital debt totaled $8,300. She was assigned 1/3 of the IRS debt, $3,212. Her credit card and medical bills were slightly lower than Glenn's. The trial court commended Donna for living extremely frugally and trying to save money for her retirement and to pay off her credit card debt.

Debts are generally "assigned on the basis of such factors as receipt of benefits and extent of participation[.] Further, there is no presumption that debts must be divided equally or in the same proportion as the marital property. And a trial court's assignment of debt is within the realm of its discretion." *Smith v. Smith*, 450 S.W.3d 729, 738 (Ky. App. 2014) (internal quotation marks and citations omitted).

The trial court assigned each party their own medical and credit card debt. The trial court's decision to assign a larger share of the tax debt to Glenn was not an abuse of discretion. The evidence showed that Glenn was responsible for failing to pay quarterly withholding tax on his business and consequently he bore a far greater responsibility for incurring the debt.

As to the business debts, Glenn points out that they were incurred in the operation of his business and were necessary expenditures for his construction projects. He contends that the debts should have been applied to offset the value of the construction business assets awarded to him and that the assignment of these debts as either a non-marital obligation or as a marital debt without an offset against the construction business assets was an abuse of discretion. "The burden of proving that a debt is marital is upon the party that incurred it and now claims it is marital." *Rice v. Rice*, 336 S.W.3d 66, 68 (Ky. 2011) (citing *Allison v. Allison*, 246 S.W.3d 898 (Ky. App. 2008)). The bills at issue were longstanding. The bill to Fourshee was over twelve years old, consisting of principal in the amount of $1,095, with accumulated interest charges bringing the total to $16,923.55. The $9,203.61 debt to Light's Plumbing & Electric had existed for approximately six years. As with the tax debts, Glenn was responsible for incurring these obligations in the operation of his business and for failing to pay them over a lengthy period, thus incurring substantial interest charges. There was no evidence that Donna bore

any responsibility for incurring these debts or for failing to pay them. The trial court did not abuse its discretion in assigning these debts to Glenn as non-marital debt.

Glenn further argues that the trial court abused its discretion in awarding temporary maintenance of $700 to Donna and subsequently awarding maintenance of $500 for sixty months in its final order. The trial court may grant maintenance "only if it finds that the spouse seeking maintenance: . . . [l]acks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and . . . [i]s unable to support himself through appropriate employment[.]" KRS 403.200(1). Maintenance will be awarded "in such amounts and for such periods of time as the court deems just," and it is directed to consider "all relevant factors including:

> (a) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

> (b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

> (c) The standard of living established during the marriage;

> (d) The duration of the marriage;

-13-

> (e) The age, and the physical and emotional condition of the spouse seeking maintenance; and
>
> (f) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance.

KRS 403.200(2).

Temporary maintenance may be awarded pursuant to KRS 403.160. "The purpose of temporary maintenance is to preserve the status quo between the spouses while the dissolution proceeding is pending." *Atkisson v. Atkisson*, 298 S.W.3d 858, 864 (Ky. App. 2009) (citing *Horvath v. Horvath*, 250 S.W.3d 316, 318 (Ky. 2008)).

The award of temporary maintenance to Donna on February 10, 2020, was based on the trial court's finding that Glenn had initially paid some of the household expenses to help Donna following the separation but had ceased making such payments since July or August 2019. He had also paid $100 per month on a credit card debt and $200 per month on the income tax debt as well as one-half of the property taxes on the marital residence for 2019.

The trial court found that Donna had reduced her expenses by discontinuing her television and garbage service, canceled insurance other than liability on her vehicle, and cut back on her clothing expenses. She had worked multiple hours and third shift. The trial court also found that Donna was trying to plan ahead and wanted to be able to place $600 per month into savings because she

-14-

has no retirement fund other than social security. The trial court found that Donna has a monthly income of $1,992 comprising her take-home pay of $1,692 plus the $300 rental income from the Tanyard Road property. Her reasonable monthly living expenses and debt payments totaled $1,778, leaving her with a surplus of $214. The trial court found that by living frugally, she had managed to increase her savings account balance from $300 at the date of separation to approximately $3,000.

The trial court nonetheless found that despite the surplus she had accumulated, Donna lacked sufficient property to provide for her reasonable needs and would be unable to sustain working the third shift and the number of hours she was currently working. It found that her earning capacity was capped by her age, work experience, and the state of her health and physical capabilities.

The trial court also found that Glenn had worked hard throughout the marriage and sustained various physical ailments affecting his shoulder, lower back, and had required knee replacements. The trial court found his monthly income to be $3,458, based on his business tax returns, but did not reduce this amount to account for individual taxes because of Glenn's unreported cash earnings and other unreported income from working as a subcontractor or hourly worker. The trial court also found that Glenn and his siblings were looking after his invalid mother, either sitting with her around the clock or hiring a substitute

sitter. The trial court found Glenn's monthly expenses of $2,944 to be reasonable and noted they were considerably more than Donna's because he was living closer to the standard of living the parties had before their separation.

The trial court awarded Donna $700 per month in temporary maintenance "[i]n order to try and equalize the financial 'pain' incurred as a result of maintaining two separate households" and to allow Donna to get nearer to the standard of living that the parties had during the marriage, and because Glenn had more earning capacity and more monthly income than Donna.

Glenn contends that Donna was not entitled to temporary maintenance because her monthly income exceeded her expenses by $214. As evidence that the amount of temporary maintenance was excessive, he points to the fact that she was able to save money during the period that it was awarded. He further argues that the trial court erred in not deducting income taxes from his net monthly income. He relies on evidence from his income tax returns, introduced by agreement after the final hearing, which showed his net business profit declined in 2020 from $40,620 to $24,021.

The trial court's award of temporary maintenance was an effort to allow Donna to maintain to some extent the lifestyle to which she had become accustomed during the course of the marriage and which Glenn continued to enjoy. The fact that she was able to save some funds for her retirement during this period

is a testament to her frugality, not a reason to reverse the award of temporary maintenance. The trial court's finding regarding Glenn's income was based on averages calculated from his tax returns for 2015 through 2018. The trial court's refusal to reduce the amount of Glenn's monthly income was based on evidence in the record that Glenn had unreported income from the business, that he withheld cash from the business deposits, and paid miscellaneous personal expenses from his business account. The trial court's conclusion that Glenn had the financial means to meet the temporary maintenance obligation was fully supported by the evidence, was fully in accordance with the statutory factors, and consequently was not an abuse of discretion.

As to the award to Donna of monthly maintenance of $500 for sixty months, Glenn contends that the trial court's calculation of Donna's living expenses was based on erroneous findings of fact. Specifically, he argues that the trial court should not have included the mortgage debt owed by Donna, as this amount would be paid off in full in about six months; that it should not have included Donna's regular counseling sessions with a therapist at a cost of $130 per month because these had ceased since February or March of 2020 due to COVID-19 restrictions and had not been resumed via Zoom; that it should not have included the cost of vision and dental insurance as these amounts were already deducted from her paycheck; and that it should not have included her credit card

and other debts because these would have been paid off by August 1, 2021. He also points out that Donna was unable to explain specifically how she spent her temporary maintenance payment of $700. Glenn argues that the trial court should have found that Donna's outstanding obligations had been reduced significantly since the temporary maintenance order was entered and insists that its findings generally demonstrated bias against him.

The trial court calculated Donna's monthly income as her take-home pay of $1,616 plus an additional $300 in rental income from the Tanyard Road property. It approved her list of monthly expenses totaling $2,740. Even if, purely for the sake of argument, the expenses objected to by Glenn are subtracted from this amount, her total monthly expenses would still fall short of her total monthly income. The basis for the trial court's award of maintenance was based on Donna's lack of financial resources, her age, her health and limited income, the length of the marriage, and the standard of living established during the marriage. These findings reflect the statutory factors, and they are all supported by substantial evidence in the record.

The trial court found that Glenn's reasonable living expenses were $3,319 and his monthly income was $3,079, based on the evidence provided by his accountant Earl Calhoun, leaving a monthly deficit of $240. Glenn disputes its finding that his $433.33 share of his mother's caregiving expenses, which he

shared with his four siblings, was unreasonable.  But the trial court decided that Glenn had the financial means to pay maintenance to Donna primarily on the basis of its finding that Glenn had undeclared income.  Glenn claims the trial court made no finding of the additional revenues that would warrant deviating from his expert witness Calhoun's calculation of his after-tax income.  But the court relied on testimony from Glenn and from Calhoun that there was unreported cash income, incorrect expense reporting and pass-through cash that was incorrectly listed as an expense on the tax returns.

The evidence of unreported income was sufficient in this case to support the trial court's findings and its decision to award maintenance to Donna in the amount of $500.

For the foregoing reasons, the findings of fact, conclusions of law, and orders of the Trigg Circuit Court are affirmed.


ALL CONCUR.


BRIEFS FOR APPELLANT:          BRIEF FOR APPELLEE:

Julia T. Crenshaw               Margaret G. Hicks
Hopkinsville, Kentucky          Cadiz, Kentucky