RENDERED:  SEPTEMBER 18, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2018-CA-000967-MR

LOUIS POMERANCE                                                  APPELLANT

APPEAL FROM JEFFERSON CIRCUIT COURT
v.      HONORABLE JUDITH MCDONALD-BURKMAN, JUDGE
ACTION NO. 14-CI-003783

LA-LE, LLC                                                          APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, CALDWELL, AND KRAMER, JUDGES.

ACREE, JUDGE:  Louis Pomerance appeals the Jefferson Circuit Court's May 29, 2018 order awarding $79,900.83 and eight percent pre-judgment interest to La-Le, LLC.  He argues:  (1) there is no substantial evidence supporting the circuit court's findings; and (2) the circuit court erred by concluding there was no ambiguity in two notes he signed.  Finding no error, we affirm.

In 2002, La-Le,[1] Pomerance, and Christopher McCarty set out to purchase a CheckCare franchise for three million dollars. To accomplish this goal, the parties formed CheckCare Enterprises, LLC. To raise the three million dollars, La-Le loaned $1,850,000 to the newly formed corporation. Each member agreed to be obligated for one-third of the loan and executed a security agreement.

Later that year, an opportunity arose to purchase a CheckCare franchise in Minnesota. However, because all parties resided in Louisville, Kentucky, they agreed it was not feasible to keep the company in Minnesota. Instead, Pomerance offered to use his company, LAP Enterprises, Inc.,[2] to acquire the company and consolidate it with his franchises in Louisville. Therefore, LAP agreed to pay La-Le $150,000 and McCarty $100,000 for their respective contributions for the purchase. Unsecured promissory notes were executed on June 15, 2002, and were not signed by Pomerance in his individual capacity.

A few years later, LAP was unable to continue making payments under the 2002 notes, so it sought a restructuring of loans by both La-Le and McCarty. LAP owed $74,975.17 to La-Le and $34,730 to McCarty. The newly restructured notes were executed October 1, 2006. On that day, a total of three notes were executed – two in the amount of $74,975.17 to La-Le, and one for

[1] Layne Smith is the principal member of La-Le, LLC.

[2] Pomerance established this company in 1990. LAP already owned six CheckCare facilities.

$34,730 to McCarty. Each note had significant drafting errors, such as the loan bore an "eight and a half (8%)" interest rate and a late fee of "ten (5%) percent." Only one note to La-Le clearly indicated it was signed by Pomerance in his capacity as the President of LAP. The other La-Le note was also signed by Pomerance, but it did not state the capacity in which he was signing.

CheckCare Enterprises, LLC, was unable to make its payments to La-Le for the $1,850,000 loan. As a result, Pomerance and McCarty each signed a new, individually secured note to La-Le for their remaining one-third balance. The note was now for $468,615.52 and utilized the same security as the 2002 note. This new note was signed October 1, 2006 – the same day and at the same time as the LAP restructuring notes to La-Le and McCarty. LAP continued to make payments until April 2010. However, Pomerance paid off the $468,615.52 note entirely in 2014 and the collateral was released.

In 2010, Pomerance informed La-Le that LAP could no longer make payments. For four years, La-Le did nothing with respect to LAP's default. But in March 2014, after Pomerance paid his $468,615.52 note, La-Le claimed Pomerance signed the LAP note in his individual capacity. Therefore, Pomerance was liable for the note. Because of this, La-Le filed an action in Jefferson Circuit Court against Pomerance, not LAP.

As the circuit court stated, "The issue before the Court was whether Defendant Pomerance (Pomerance) or his company, LAP[,] was the obligor." After a hearing, the circuit court concluded Pomerance was individually liable on the note, finding him individually liable to La-Le in the amount of $79,900.83, plus pre-judgment and post-judgment interest. Pomerance filed a motion to alter, amend, or vacate the judgment, which the circuit court denied. This appeal followed.

The rule requiring findings of fact following a bench trial is CR[3] 52.01. It directs the circuit court to make specific findings of fact and state separately its conclusions of law relied upon to render its judgment. CR 52.01; *Barber v. Bradley*, 505 S.W.3d 749, 754 (Ky. 2016).

Kentucky appellate courts "have long held that for purposes of appellate review, a finding of fact of a trial judge ranks in equal dignity with the verdict of a properly instructed jury, *i.e.*, if supported by substantial evidence, it will be upheld, otherwise, it will be set aside as 'clearly erroneous.'" *Owens-Corning Fiberglas Corp. v. Golightly*, 976 S.W.2d 409, 414 (Ky. 1998) (citations and internal quotation marks omitted). "Substantial evidence" means evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men. *Kentucky State Racing Comm'n v. Fuller*, 481 S.W.2d

---

[3] Kentucky Rules of Civil Procedure.

298, 308 (Ky. 1972). Thus, even though the decision of the circuit court is accorded presumptive correctness on appeal, the appellate court must still review the evidence to decide if that decision was clearly erroneous.

When presented with conflicting evidence of substance, a court sitting as factfinder must choose which substantial evidence will serve as the foundation for the decision. We cannot conclude that the decision made in this case by this circuit court is clearly erroneous.

The entire purpose for refinancing was LAP's financial instability and consequent inability to service the original obligation. Couple this fact with the testimony from all parties and the note itself, it is not a surprise that the circuit court reasonably concluded Pomerance was personally liable to La-Le. Pomerance's substantial-evidence arguments are little more than an assertion that the substantial evidence he presented to the contrary should have carried the day. His remaining arguments do not bear on the central issue of whether Pomerance or LAP was liable on the note.

For example, Pomerance argues the two notes signed by him created an ambiguity that could only be resolved by examining both notes and the circumstances surrounding the execution. He believes the two notes, when read together, indicate an obligation of $149,950.34 – twice the amount he actually owed – and that the multiple irregularities rendered both notes ambiguous and

unenforceable.  The circuit court concluded the ambiguity was resolvable and did not render the notes unenforceable.

Although there were a few discrepancies in the notes (eight and a half percent versus 8% and ten percent versus 5%), the circuit court resolved them, in Pomerance's favor, based on testimony from La-Le representatives of the parties' intent regarding the facially inconsistent interest rates.

Before the circuit court, Pomerance argued the notes were forgeries and misrepresentations.  The circuit court found nothing persuasive to support this argument, nor does this Court.

## **CONCLUSION**

Based on the foregoing, we affirm the Jefferson Circuit Court's May 29, 2018 findings of fact, conclusions of law, and order.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Ronald L. Gulick
Raymond G. Smith
Louisville, Kentucky

BRIEF FOR APPELLEE:

Sarah Harris
Louisville, Kentucky