RENDERED: JULY 18, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0868-MR

ALEXUS TISHAUN WALKER            APPELLANT

v.        APPEAL FROM FAYETTE CIRCUIT COURT
HONORABLE LIBBY G. MESSER, JUDGE
ACTION NO. 21-CI-02675

VANNA R. BRITTAIN AND
DEMONTREY NEAL            APPELLEES

OPINION
AFFIRMING IN PART,
VACATING IN PART,
AND REMANDING

** ** ** ** **

BEFORE: A. JONES, L. JONES, AND KAREM, JUDGES.

JONES, L., JUDGE: Appellant, Alexus Walker (Walker), appeals from a February 20, 2024 Order of the Fayette Circuit Court which denied her petition for custody and motion for unsupervised visitation concerning the minor child J.J.N. (Child).[1]

---

[1] We note that the circuit court's February 20, 2024 order uses the term "timesharing" rather than "visitation." Technically, a non-custodial parent has visitation rather than timesharing; however,

After careful review of the briefs, the law, and the record on appeal, we affirm in part, vacate in part, and remand; namely we vacate the portion of the February 20, 2024 order which states that supervised visitation shall be in the discretion of Appellee, Vanna Brittain (Brittain).

BACKGROUND

The family involved in the underlying case has had several intertwining cases in Fayette Circuit Court, including civil custody; dependency, neglect, and abuse (DNA); and domestic violence. The following facts are those pertinent to the instant appeal.

Walker is the biological mother of Child, who was born in 2016. A few days after Child was born, the Cabinet for Health and Family Services (the Cabinet) filed a DNA petition for Child due to an ongoing DNA case involving Child's sibling.[2] The allegations involving Child's sibling concerned multiple injuries the sibling sustained while Walker was in a caretaking role. While the exact nature of the injuries and how they were sustained is heavily disputed by Walker, it is uncontroverted that Child's sibling had sustained at least one rib fracture, a number of small bruises, and a skin wound to one foot.

---

the Court recognizes that the terms are often used interchangeably and one's use over the other has no practicable legal effect. *See Turner v. Turner*, 672 S.W.3d 43, 52 (Ky. App. 2023) (citing *Pennington v. Marcum*, 266 S.W.3d 759, 765 (Ky. 2008)).

[2] Fayette County Case Nos. 16-J-1500-001 and 15-J-1783-001.

Walker stipulated to a risk of neglect, and Child was placed with Brittain, who is Child's paternal great-grandmother. Disposition occurred in early 2017, and the DNA case ended in November of that year with Brittain receiving permanent custody of Child. Walker exercised supervised visitations during the course of the DNA case and continued to do so after 2017. An aftercare plan provided by the Cabinet instructed that Brittain would participate in visitation with Child and Walker, and that all visits would be supervised with no overnight visits. (Record (R.) at Respondent's Exhibit No. 3 to January 8, 2024 Hearing.) Notably, Walker did not appeal any orders from the DNA case.

In April 2021, Brittain halted visitations between Walker and Child after witnessing a concerning video call between Walker and Child's father during a supervised visit when Child was present.[3] Around the same time there were also some disagreements between Brittain and Walker about increasing visitation and disagreements between Brittain and Child's maternal grandmother, Angela Watkins (Ms. Watkins), concerning allowing overnight visitations. (Video Record (V.R.) January 8, 2024 Hearing – 3:02:40.)

---

[3] The parties dispute what happened during this video call. Brittain claimed that she heard Child's father crying on the other end and Walker telling him that "you did this to us." Walker claimed that Child asked to initiate the call, the call was relatively normal, and that to the extent Child's father was upset, it was because Child was looking at his tablet instead of talking with him. It is undisputed that Walker initiated a video call to Child's father without notifying Brittain; that Child was present during the call; and that Child had been somewhat distraught during the visit with Walker's family, having been forcefully causing himself to vomit earlier in the day.

Walker filed a petition for custody in September 2021. It appears that the circuit court heard a motion to dismiss filed by Brittain later that year. However, for reasons not clear from the record on appeal, no orders concerning that motion were entered into the record; thus, any oral findings of fact and conclusions of law relating to that motion cannot be considered by this Court. *See Kindred Nursing Centers Ltd. P'ship v. Sloan*, 329 S.W.3d 347, 349 (Ky. App. 2010). In June 2022 and December 2022, Walker filed additional motions in which she made requests regarding visitation. (R. at 38 and 108.) After hearing Walker's first motion, the circuit court granted her supervised visitations, which she soon began exercising at Greenhouse 17, a secured visitation facility. The Court apparently denied her December 2022 motion. However, again, for reasons not clear from the record on appeal, no written orders were entered regarding either of Walker's motions at the time they were heard.

In February 2023, Judge Libby Messer was appointed as a special Judge after the newly elected Judge Tiffany Yahr recused.[4] Recognizing the oversight of no written orders previously being entered into the record, in April 2023 the circuit court issued an order clarifying that Walker would have bi-weekly

---

[4] Judge Kathy Stein and Judge Carl Devine were the previous judges in this matter.

visits at Greenhouse 17. The order also appointed a Friend of the Court (FOC) to investigate issues involving Child in preparation for a comprehensive hearing.[5]

This hearing occurred in January 2024, at which the FOC, Walker, Brittain, and four other members of Walker's family, called by Walker, testified. Brittain appeared with counsel and Walker appeared *pro se*. The FOC affirmed the contents of her previously filed report in which she recommended that custody remain with Brittain and for Walker to continue having supervised visitation. The majority of the testimony from Walker's family consisted of the circumstances surrounding a video call between Walker and Child's father in April 2021 and a social media campaign in the Summer of 2022. That campaign included numerous flyers being posted in several places in and around Fayette County alleging that Walker's children had been "medically kidnapped." It was disputed whether the flyers were created and posted by Ms. Watkins and Walker's family without Walker's input or assistance; however, Walker testified that she did not object to the flyers being posted, though she claimed she did not agree with the flyers' sentiment. (V.R. January 8, 2024 Hearing – 2:25:30.)

---

[5] A Friend of the Court is an individual appointed as an officer by a circuit court to "investigate the child's and the parents' situations, to file a report summarizing his or her findings, and to make recommendations as to the outcome of the proceeding." Kentucky Revised Statutes (KRS) 403.090.

At several points throughout the hearing Brittain objected to Walker's leading questioning of witnesses and attempting to testify on their behalf; however, instead of barring her questioning, the circuit court assisted Walker in rephrasing her form of questioning. At the end of the hearing the circuit court took the matter under advisement, stating that it was taking judicial notice of the underlying DNA cases and the related civil cases involving the family,[6] would be reviewing the past hearings in the underlying case, and instructed each party to submit their own proposed findings of fact and conclusions of law. The circuit court subsequently entered an order denying Walker's petition and motion for unsupervised visitation on February 20, 2024. Walker then filed a motion requesting post-judgment relief under CR[7] 59.05 which the circuit court ultimately denied on May 22, 2024. This appeal followed.

STANDARD OF REVIEW

"When an appellate court reviews the decision in a child custody case, the test is whether the findings of the trial judge were clearly erroneous or that he [or she] abused his [or her] discretion." *Frances v. Frances*, 266 S.W.3d 754, 756 (Ky. 2008) (citing *Eviston v. Eviston*, 507 S.W.2d 153 (Ky. 1974)). A judgment is

---

[6] Those included Ms. Watkins civil cases concerning grandparent visitation (Fayette County Case Nos. 22-CI-00968 and 21-CI-02674) and Walker's civil custody case concerning Child's sibling (Case No. 22-CI-03273).

[7] Kentucky Rules of Civil Procedure.

not clearly erroneous if it is supported by substantial evidence, which is "evidence of substance and relevant consequence having the fitness to induce conviction in the mind" of a reasonable person. *Owens-Corning Fiberglas Corp. v. Golightly*, 976 S.W.2d 409, 414 (Ky. 1998) (citations omitted).

Regarding the circuit court's legal conclusions, and its application of the law to established facts, this Court shall review for an abuse of discretion under the *de novo* standard. *See Commonwealth v. Montaque*, 23 S.W.3d 629, 631 (Ky. 2000) (citations omitted).

## ANALYSIS

On appeal, Walker raises a variety of arguments, some of which challenge the findings and administration of the underlying DNA cases involving Child and his sibling and others which are not otherwise properly preserved for this Court's review. Any argument pertaining to the DNA cases is not appropriately before this Court, as the time in which Mother could have appealed any final and appealable orders from those cases has long since passed.[8] Therefore, review shall be limited only to those issues which have been properly brought before the Court, and any issue not addressed herein is deemed to be without merit.

---

[8] A notice of appeal from a judgment must be filed within 30 days after the date of notation of service. *See* Kentucky Rules of Appellate Procedure (RAP) 3(A)(1).

In the instant case, Walker is seeking to modify the terms of the order awarding Brittain permanent custody arising out of the DNA case. Pertaining to the modification of custody, KRS 403.340 governs; pertaining to the modification of visitation, KRS 403.320 governs. We shall address Walker's arguments as they relate to each statute.

## A. Custody

If an order granting permanent custody to a third-party non-parent in a DNA case appropriately considers the best interests of a child found under KRS 403.270(2), "the modification standard under KRS 403.340 will control when a natural parent seeks to regain custody[.]" *See Appleman v. Gebell*, 706 S.W.3d 223, 226 (Ky. 2024). In this case, there is no indication that Child's best interests were not appropriately considered prior to the award of permanent custody. *Cf. London v. Collins*, 242 S.W.3d 351, 356 (Ky. App. 2007) (holding that best interests were not appropriately considered in a case against a father who did not have a DNA petition filed against him nor did he have counsel appointed for him in a DNA case, when the circuit court merely relied on the unsworn testimony of a Cabinet worker and presumed that father waived custody.)

KRS 403.340(3) provides in relevant part:

> [A] court shall not modify a prior custody decree unless after hearing it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of entry of the prior decree, that a

-8-

change has occurred in the circumstances of the child or his custodian, and that the modification is necessary to serve the best interests of the child. When determining if a change has occurred and whether a modification of custody is in the best interests of the child, the court shall consider the following:

(a) Whether the custodian agrees to the modification;

(b) Whether the child has been integrated into the family of the petitioner with consent of the custodian;

(c) The factors set forth in KRS 403.270(2) to determine the best interests of the child;

(d) Whether the child's present environment endangers seriously his physical, mental, moral, or emotional health; [and]

(e) Whether the harm likely to be caused by a change of environment is outweighed by its advantages to him[.]

In its February 20, 2024 Order, the circuit court listed and considered each of the above factors of KRS 403.340.[9] Ultimately, it found that modification of custody was not in the best interests of Child. Walker challenges the sufficiency and veracity of the findings made, arguing the circuit court abused its discretion by inappropriately ignoring substantial changes in her circumstances and not accurately weighing the truthfulness of statements made against her.

---

[9] The only factor that the circuit court did not consider was KRS 403.340(3)(f), whether the parent placed the child with a de facto custodian, which is not applicable in this matter.

From our reading of the February 20, 2024 Order, we see no clear error with the circuit court's findings. The circuit court explicitly recognized Walker's progress in working on her case plan,[10] obtaining stable employment, and maintaining housing. Notably, it did not find that a substantial change had *not* occurred. However, in its weighing of the KRS 403.340 factors, it also recognized the concerns from the FOC and Brittain that, despite the progress made, Walker's conduct had substantially remained the same since the DNA cases. Of pertinence, the circuit court found legitimate concerns with Walker's parental decision-making ability based on her continuing denial of the circumstances surrounding the injuries sustained by Child's sibling. It also found that Walker showed a "rigid personality which has [an] inability or difficulty considering all facts or circumstances that do not support her chosen narrative." Additionally, the circuit court took issue with the concerning nature of the flyer campaign alleging the kidnapping of Walker's children – which occurred more than four years after the children were removed – stating that Walker failed to "recognize any potential harm or distress this could have caused the child" and "directly calls into the question the appropriateness of

---

[10] Whether Walker completed her case plan prior to the close of the DNA case is disputed; however, the circuit court did not find that Walker had failed to complete her case plan as of the January 8, 2024 hearing. Additionally, this precise issue is one that would have been better suited in a direct appeal from the DNA case.

her parental decision making and ability to put her child's interests ahead of her own emotions."

Regarding the veracity of the circuit court's findings, Walker argues that the circuit court inappropriately relied on fraudulent statements and documents. Specifically, Walker takes issue with the medical documents from the DNA case involving Child's sibling, the kidnapping flyer, and various pieces of testimony from Brittain including her statements about the April 2021 video call. As we have already explained, Walker's arguments with the administration of the DNA cases involving Child and his sibling are not appropriate to bring now. Additionally, Walker did not object to the circuit court taking judicial notice of the DNA cases, in fact, she requested it. Regarding the kidnapping flyer, while Walker objects to sharing its viewpoint, she did not object to its admittance as an exhibit below. Finally, other than her own testimony and that which she elicited from her family members, Walker does not provide any other evidence indicating any instances of fraud or perjury in Brittain's testimony. To the extent Walker's testimony contradicted that of Brittain, the circuit court was in the position to weigh the testimony and make credibility assessments, which it did. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003) ("[J]udging the credibility of witnesses and weighing evidence are tasks within the exclusive province of the trial court."). In appellate review of such assessments, "due regard shall be given to the

-11-

opportunity of the trial court to judge the credibility of the witnesses." CR 52.01.

In this case it is clear that the circuit court thoroughly considered the entirety of the testimony and evidence presented, found Brittain to be more credible than Walker and her witnesses, and chose to believe Brittain.

## B. Visitation

Walker argues that the circuit court erred in not granting her motion for unsupervised visitation because continued supervised visitation is a severe restriction, and there was no finding that unsupervised visitation would seriously endanger Child. We disagree.

Pursuant to KRS 403.320(3) "[t]he court may modify an order granting or denying visitation rights whenever modification would serve the best interests of the child; but the court shall not restrict a parent's visitation rights unless it finds that the visitation would endanger seriously the child's physical, mental, moral, or emotional health." A "restriction" to a non-custodial parent's visitation means to provide something less than "reasonable visitation." *Kulas v. Kulas*, 898 S.W.2d 529, 530 (Ky. App. 1995). "What constitutes reasonable visitation is a matter which must be decided based upon the circumstances . . . rather than any set formula." *Drury v. Drury*, 32 S.W.3d 521, 524 (Ky. App. 2000); *see also Turner*, 672 S.W.3d at 53.

In the instant case, Walker has been exercising supervised visitations essentially since Child's birth pursuant to the terms of the DNA case. Though the supervised visits ceased for a time, they began again at Greenhouse 17 pursuant to the circuit court's April 10, 2023 order. As addressed above, the circuit court conducted a thorough and comprehensive analysis concerning Child's best interests – with which we find no clear error. The circuit court then chose not to grant Walker's motion for unsupervised visitation, or in other words, chose not to modify the existing order in place at the time. Specifically, the February 20, 2024 Order provides that visitation shall continue to be supervised at Greenhouse 17 unless Brittain agrees to another third-party supervisor.[11]

Under the circumstances, we do not see how Walker's visitation was restricted to something less than reasonable, as the February 20, 2024 Order simply maintained the *status quo* the parties had been exercising for months. The circuit court need only have considered Child's best interests when contemplating Walker's motion, which it did, and there was no need to specifically find that unsupervised visitations would seriously endanger Child.

That being said, this Court recognizes that the February 20, 2024 Order does contain the language that "any supervised [visitation] with the child

---

[11] Previously, Brittain served as a supervisor. The only other supervisor previously approved by the Cabinet was a maternal aunt; however, that aunt passed away sometime in 2023.

should be in the discretion of the custodian." While this language seemingly contemplates any *increase* to supervised visitation in Brittain's discretion, it similarly could be read to support any *decrease* in Brittain's discretion. At this point, the April 10, 2023 Order provides that Walker shall have bi-weekly supervised visits at Greenhouse 17. In the Court's view, anything less than the current bi-weekly visits would constitute a restriction to Walker's visitation, and so would have required a specific finding of serious endangerment. Thus, it is necessary to vacate this portion of the judgment and remand for entry of an order consistent with this Opinion.

<u>CONCLUSION</u>

For the forgoing reasons, the portion of the Fayette Circuit Court's February 20, 2024 Order stating that supervised visitation shall be in Brittain's discretion is vacated, while the remainder of the order is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Alexus Tishaun Walker, *pro se*
Lexington, Kentucky

BRIEF FOR APPELLEE:

Janet Humphrey Cole
Nicholasville, Kentucky